J. A. Folger & Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Folger Estate Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 22212, 30721, 31200, 35147.   Promulgated November 4, 1932.

*James S. Y. Ivins, Esq., Joseph H. Brady, Esq.,* and *H. Edwin Nowell, C. P. A.,* for the petitioners.
*Eugene Meacham, Esq.,* for the respondent.

1

2

LANSDON: Each of the petitioners here claims that it was affiliated with the parent corporation for Federal income tax purposes in each of the taxable years. The parent corporation and the Nevada Company had common stock outstanding in the several taxable years in the respective amounts of 3,300 and 6,000 shares. Five persons and corporations which may be regarded as the Folger family interests owned stock in the two corporations in the respective amounts of 2,950 and 4,660 shares or 89⅔ and 77⅔ per cent of the entire issues. Four persons not members of the Folger family owned respectively 350 and 1,340 shares of such corporations. Emma F. Platt owned 100 and 265 shares, respectively; A. K. Munson owned 250 shares of the parent corporation and none of the Nevada company; R. R. Vail and F. P. Atha owned respectively 175 and 900 shares of the Nevada company and none of the parent corporation. The record contains no evidence of any effective legal control of the minority stock by the Folger family interests. Since such interests, even if they were the same within the meaning of the law owned only approximately 90 per cent and 78 per cent, respectively, of the stock of the parent corporation and the Nevada company, they fall short, as now determined by the courts, of ownership of substantially all the stock of those corporations. As they had no legal control over the minority stock holdings, we think it follows that the parent corporation and the Nevada company were not affiliated in any of the taxable years. *Handy & Harmon* v. *Burnet*, 284 U. S. 136.

The Folger family interests owned all but two of the shares of the Folger Estate Company and all but 351 shares, or slightly under 90 per cent, of the stock of the parent corporation. There is no evidence that the minority holdings in the parent corporation were subject to any effective legal control by the majority, and, as the stock of the parent corporation falls short of substantially all of the ownership, we think it follows, on the authority above cited, that the parent corporation and the Folger Estate Company were not affiliated in the taxable years.

Inasmuch as the common stock situation in the taxable years deprived the petitioners of the right to file consolidated returns as subsidiary corporations of the parent corporation it is not necessary to discuss the effect, if any, of the diverse holdings of the preferred stock of that concern.

The petitioners also contend that the statute of limitations had run against their deficiencies for 1921, if any, prior to the date of the respective deficiency notices. The consolidated return for the fiscal

years ended November 30, 1921, was filed on February 16, 1922. It was a completed return and stated separately the income and invested capital of each corporation. Since the record discloses that consolidated returns filed by the parent corporation had been accepted and tax liability thereunder settled in prior years, it can not be said that such return was unauthorized at the date of its filing. In our opinion it was sufficient to start the statute of limitations running against the tax liability, if any, for each of the petitioners. *F. A. Hall Co.*, 3 B. T. A. 1172; *National Tank & Export Co.*, 3 B. T. A. 1217; *Fibre Container Co.*, 9 B. T. A. 575; *Matteawan Mfg. Co.*, 4 B. T. A. 953; *Kellogg Commission Co.*, 6 B. T. A. 771; *Stetson & Ellison*, 11 B. T. A. 397; affd., 43 Fed. (2d) 553.

The four-year limitation period applicable to the tax liability of the three corporations included in the consolidated return filed on February 16, 1922, expired on February 16, 1926. On March 4, 1926, the petitioners separately executed waivers extending the time for assessing and collecting their 1921 taxes to December 31, 1926. On December 14, 1926, new waivers were executed by all three corporations extending the time for making assessments to December 31, 1927. The deficiency notices that are the bases of these proceedings were mailed to the Folger Estate Company and the Nevada Corporation on November 12, 1926, and July 20, 1927, respectively. Since the statute of limitations ran against the petitioners on February 16, 1926, and no waivers were filed prior to the enactment of the Revenue Act of that year on February 26, the agreements entered into on March 6, 1926, could not extend the time for assessment. Section 1106 of the Revenue Act of 1926 extinguished all tax liability against which the statute had run prior to its enactment unless waivers had been executed prior to that date. *Peerless Woolen Mills*, 13 B. T. A. 1119; *Steiner Mfg. Co.*, 18 B. T. A. 740; *White Oak Transportation Co.*, 24 B. T. A. 307.

The record discloses that the parent corporation filed a waiver on October 25, 1925, which extended the time for making assessments of 1921 taxes to December 31, 1926, and that it filed similar waivers on April 19, 1926, and December 14, 1926, extending such time to December 31, 1927. In his brief counsel for respondent argues that such waivers were effective to extend the period of limitation as to the petitioners, since the parent corporation had acted as the agent for its subsidiaries in filing the consolidated return and so had authority as such agent to execute waivers binding on the petitioner. A sufficient answer to this argument is that, even if the parent corporation had authority to execute waivers as the agent of its subsidiaries, it never did so. The waivers filed by the parent corporation related only to its own tax liability. They include no mention

of the subsidiaries. They were not signed by any officer of either of the petitioner taxpayers here as such and therefore are lacking in all the statutory requirements of binding agreements effective to extend the period of limitations. Nor would this situation have been different had the respondent finally held in favor of the affiliation contended for here. In that event the parent corporation would have been liable for all the taxes due upon the income of its subsidiaries in conformity with the information returns filed and neither of these petitioners would have the standing of a taxpayer within the meaning of the law. In our opinion the respondent was without authority to assess or collect any 1921 taxes as to these petitioners when the notices of deficiencies were issued.

The parent corporation filed consolidated returns for itself and the petitioners in each of the years under review and paid all the taxes shown to be due thereon. The information return filed by the petitioners for each of such years stated that none of the tax was to be assessed against either subsidiary corporation. On or about the dates at which the parent corporation paid the several installments of taxes shown on the consolidated returns it was reimbursed by each of the subsidiaries, as set forth in our findings of fact. The petitioners contend that in the computation of the deficiencies here involved the respondent should have credited each of them in each of the taxable years with the amounts it paid in discharge of its liability shown on the consolidated return. This contention is in conformity with decisions of this Board in several proceedings involving similar questions. Affiliation having been denied, it follows that the true deficiency against each of the separate companies is the difference between its share of the tax shown on the consolidated return and the amount of its tax liability as a separate taxpayer. The deficiencies asserted against the several petitioners should be credited with the amounts which each of them paid to the parent corporation in discharge of its proportion of the tax shown on the respective consolidated returns. *Mather Paper Co.*, 3 B. T. A. 1; *George A. Fink Co.*, 5 B. T. A. 76; *C. A. O'Meara*, 11 B. T. A. 101; *Oilbelt Motor Co.*, 16 B. T. A. 831; *Robert Treat Hotel Co.*, 20 B. T. A. 968; *Myresdale Fuel Co.* v. *United States*, 44 Fed. (2d) 497; *West Virginia R. R. Co.* v. *Jewett Bigelow & Brooks Coal Co.*, 26 Fed. (2d) 503.

Petitioners also claim the right to have their taxes computed under the provisions of section 328 of the Revenue Act of 1921. The evidence of abnormalities in income and invested capital does not convince us that either petitioner will suffer any hardship, as compared with like corporations in a similar business, if its tax liability for each of the several years under review is determined under the

provisions of section 230 of the Revenue Act of 1921. The plea for special assessment is denied.

The findings of fact and opinion herein take the place of our findings of fact and opinion in these proceedings promulgated on May 13, 1931, which are hereby vacated.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH, dissenting: I dissent from so much of the opinion of the Board as holds that the tax liability of each of the petitioners for the year ended November 30, 1921, was extinguished by the statute of limitations prior to the issuance of the deficiency notices for that year.

The consolidated and information returns filed for that year showed that the parent company was liable for the tax due on the consolidated return. All of the evidence goes to show that the parent company acted as the agent of the subsidiary corporations.

MARQUETTE, STERNHAGEN, and GOODRICH agree with this dissent.

