NORTH SIDE LUMBER & TIMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34924. Promulgated April 14, 1933.

*Wm. S. Bennett, Esq.*, for the petitioner.
*Chester A. Gwinn, Esq.*, for the respondent.

OPINION.

TRAMMELL: The petitioner alleges that to permit the collection of the deficiencies in controversy under the circumstances disclosed in this proceeding would constitute the taking of property of its stockholders without due process of law, in violation of the Fifth Amendment to the Constitution of the United States. In support of this contention the petitioner points to the fact that most of the additional taxes asserted by the respondent result from transactions of the John E. Burns Lumber Co., the parent corporation, which owned all of the capital stock of the petitioner during the taxable years; that said parent corporation has long since been dissolved and collection of the deficiences from it is now barred by limitation; that the petitioner had no connection with said transactions of the parent corporation, derived no profit therefrom, and because of a lack of definite information is not in position to defend against respondent's claims; and, lastly, that the stockholders of the petitioner have completely changed since the taxable years.

On the basis of these facts the petitioner argues that, there being no question of fraud involved, it would be a violation of the Fifth Amendment to the Constitution to permit the taking of the property of the present stockholders, to wit, their respective shares of the capital stock of the petitioner, in satisfaction of the tax liability incurred because of acts or omissions of the officers of the John E. Burns Lumber Co., a separate corporate entity, in 1920 and 1921, during which years the present stockholders owned no interest in the petitioner corporation.

The petitioner cites *Lipke* v. *Lederer*, 259 U. S. 557; *Regal Drug Corp.* v. *Wardell*, 260 U. S. 386; and *Dukich* v. *Blair*, 3 Fed. (2d) 302. The cited cases involved certain provisions of the National

Prohibition Act, under which collectors of internal revenue sought to assess, on account of alleged unlawful sale of liquor, penalties designated therein as taxes, without notice or hearing to the alleged offender, and thereafter to enforce said penalties by distraint. Such procedure was held to deny due process of law and trial by jury, but those decisions in our opinion have no application here, even by analogy.

Aside from the lack of authority to support the petitioner's contention, we are not impressed by the argument on this point. A corporation is an artificial person, a wholly separate and distinct entity from its stockholders, and a change in stock ownership does not effect the liability of the corporation to meet its obligations, whether such change of stock ownership is partial or complete. The assets of a corporation generally are subject to the payment of its debts prior to the right of the stockholders to any portion thereof, and this principal is not affected by changes in the personnel of the stockholders. Indeed, a contrary rule would work positive fraud upon the creditors of a corporation, in that by a mere change of stockholders the corporation could avoid the payment of its just debts, and the value of corporate stock would in such event rest not upon the net worth of the corporation, but upon the basis of the total value of the assets without regard to outstanding liabilities. To state such a proposition is sufficient to refute it because of the obvious inequitable result to creditors whose claims upon the corporate assets are superior to those of common stockholders.

Certainly the liability of the petitioner for income and profits taxes lawfully incurred in prior years, if any, was neither discharged nor lessened by reason of the subsequent change of stockholders. On this issue, the petitioner's contention can not be sustained.

The petitioner has pleaded the statute of limitations in bar of assessment and collection of the proposed deficiencies, but failed to submit proof at the hearing or argument on brief in support of its bare allegation. The record discloses, however, that the consolidated returns of the petitioner and its parent corporation for the years 1920 and 1921 were filed on April 11, 1921, and June 15, 1922, respectively. Hence, the statutory periods of limitation for assessment and collection of income and profit taxes for said years expired April 11, 1926, and June 15, 1926. (Sec. 277 (a) (2) and (3), Revenue Act of 1926.) But on December 23, 1925, prior to the expiration of said periods, the petitioner and the respondent consented in writing to the later assessment and collection of any tax due under any return made by or in behalf of the petitioner for said

years 1920 and 1921, and by said agreement extended the period for assessment and/or collection to December 31, 1926. On October 18, 1926, prior to the expiration of the period so agreed upon, a second waiver was executed extending such period to December 31, 1927. On December 22, 1927, the notice of deficiency was mailed to the petitioner. The validity of said waivers is not attacked. Petitioner's plea of limitations is denied. (Sec. 278 (c), Revenue Act of 1926.)

The principal issue in controversy here, and which gives rise to most of the additional tax asserted for 1920, is the amount of profit, if any, realized by the John E. Burns Lumber Co. from the sale in said year of certain real estate acquired prior to March 1, 1913. In 1906 said company purchased real estate in the City of Chicago, on West Chicago Avenue, containing about 130,000 square feet, at a cost of $158,961.72. It sold the property in 1920 for $438,635.75, and in the consolidated return filed by said company for itself and the petitioner herein for said year, no gain or loss from said sale was reported. The respondent determined that the value of said property at March 1, 1913, was $275,000, or $2.12 per square foot, and asserted a taxable profit in the amount of $163,635.75.

At the hearing the respondent offered no evidence concerning the March 1, 1913, value of the property in question, apparently being content to rely upon the prima facie correctness of his determination. On the other hand, the petitioner offered the testimony of an expert witness who was familiar with the development of real estate and the values thereof in the locality where said property was situated, for many years prior and subsequent to 1913. This witness, who had been an industrial real estate broker for about 25 years, fixed the fair market value of the property referred to, as of March 1, 1913, at $4.31 per square foot, which would give a total valuation at said date in excess of the sale price in 1920.

In explanation of his opinion, the witness testified as to sales of similar property, and concerning developments in the neighborhood of the property in question, and other factors which he took into consideration.

About 1906 Montgomery Ward & Company began acquiring property in the vicinity of the Burns property, and between 1908 and 1910 constructed their main building, with several sections completed afterwards. Also, Sprague-Warner constructed a building nearby, which was finished in 1910. Afterwards, the Nonast Company erected a building there, and about the same time Greason-Flacker built a new tunnel on North Branch Street about 200 feet northwest of the Burns property. These various improvements ranged from

about $350,000 to $2,000,000 each. The developments mentioned brought on a "boom" and resulted in material increases in the value of property in that district. This appreciation continued until about 1915, when values began to drop. Montgomery Ward & Company purchased one parcel of land in 1910 at $2.50 per square foot and another in the same year at $2.63 per square foot. The Montgomery Ward purchases and subsequent developments added about 33 per cent to the prior values of property in the district, and the Burns property was worth approximately 25 per cent more because of its location and facilities consisting of a permanent railroad switch and a ramp leading into the property from the adjacent street.

Considering all the evidence in the record before us, we have reached the conclusion that the Burns property had a fair market value at March 1, 1913, of not less than the price at which it was sold in 1920, and have so found. It follows that no taxable profit was realized by the John E. Burns Lumber Co., the parent corporation of petitioner, from the sale of said property in 1920.

The remaining issue relates to the failure of the respondent to allow as a credit or offset against the petitioner's total tax liability for each taxable year the amount of tax assessed against and paid by the petitioner on each of the original consolidated returns.

The respondent has determined that the petitioner's total tax liability for 1920 and 1921 was $10,303.88 and $5,612.93, respectively, which amounts respondent further determined to be the deficiencies due from the petitioner for said years, notwithstanding taxes were assessed against and paid by the petitioner on the consolidated returns for 1920 and 1921 in the amounts of $5,378.23 and $4,409.12, respectively.

The respondent has asserted the deficiencies against the petitioner without taking into consideration "the amount shown as the tax by the taxpayer upon his return" for each such year, as required by the statute. The petitioner, in the determination of the amount of the deficiency, is entitled to have its total tax liability reduced by the amounts shown herein to have been assessed against and paid by it on the consolidated returns in determining the deficiencies due from it for the taxable years involved. *Washburn Wire Co.*, 26 B. T. A. 1146; *Folger & Co.*, 27 B. T. A. 1; *Trahern Pump Co.*, 27 B. T. A. 363.

The deficiencies will be redetermined in accordance with the foregoing opinion.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*