ANNIE WATTS HILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53889.  Promulgated November 16, 1932.

*Edmund B. Quiggle, Esq.*, and *William W. Sledge, Esq.*, for the petitioner.

*W. R. Lansford, Esq.*, and *Newton Montgomery, Esq.*, for the respondent.

OPINION.

GOODRICH: This proceeding involves the redetermination of a deficiency of $4,741.98 for the year 1927, of which the amount of $2,726.65 is in controversy.  Only one issue is raised, namely, whether the amount of $25,000 received by the petitioner in 1927 in redemption of 250 shares of Union Bleachery, issued to her as a stock dividend in 1922, should be treated as essentially equivalent to the distribution of an ordinary dividend under section 201 (g) of the Revenue Act of 1926, or as a distribution in partial liquidation under section 201 (c) of that act.  The facts were stipulated, and that stipulation we incorporate herein by reference as our findings of fact, but for the purposes of this report a brief statement will suffice.

In September, 1922, petitioner inherited 250 shares of the common stock of Union Bleachery.  In December, 1922, she received a like amount of preferred stock from the company as a stock dividend and, again, in October, 1925, received as a stock dividend 250 shares of common stock.  In July, 1927, she received $25,000 in cash in redemption of her preferred stock previously received as a stock dividend.  We infer that at the same time she received a further stock dividend of 250 shares of common stock.  While that fact is not stipulated, it does appear that such stock dividend was declared and issued by the company, and our inference is only that she received her proportionate share thereof.  There is no dispute concerning the amounts here involved.  Should respondent's contention as to the applicability of section 201 (g) be upheld, it is conceded that his determination of deficiency is correct; should his contention be denied, it is conceded that petitioner's return for 1927 discloses correctly her capital gain from this transaction.

Union Bleachery was organized as a corporation on or about July 1, 1922, with an authorized capital of $400,000, being all common

stock of the par value of $100 a share. On December 29, 1922, its authorized capital was increased to $1,200,000, the increase of $800,000 being preferred stock, bearing dividends at 8 per cent, redeemable after two years, having a par value of $100 a share, and containing various protective provisions against encumbrance of property. The next day a dividend of 100 per cent upon the common stock, to be paid in the new preferred stock, was declared; consequently $400,000 of the preferred stock was issued immediately in payment of the dividend, the balance of like amount remaining unissued. On December 31, 1922, after the issuance of the stock dividend, the undivided profits of the company amounted to $432,284.68 without considering certain reserves established which may or may not have been proper appropriations of surplus.

On October 31, 1925, a dividend of 100 per cent upon the common stock, payable in *common* stock was declared and was thereafter paid. We assume that appropriate corporate action respecting the company's authorized capital was taken in order that this common stock might be issued, although the record before us is silent on the matter. On July 1, 1927, in conformity with action of the directors at a meeting held on April 26, 1927, and following notification to the stockholders, the company redeemed its preferred stock outstanding in the amount of $400,000 and at the same time paid in *common* stock a dividend of 50 per cent (being $400,000) upon the common stock outstanding of $800,000. The action of the directors at their meeting mentioned is reflected on the minutes as follows:

BE IT RESOLVED, That all the Preferred Stock of this corporation of the aggregate par value of $400,000.00 be redeemed and retired on July 1st, 1927, in accordance with the terms and provisions of the resolution authorizing the issue of such Preferred stock, and that the President be authorized and directed to give notice to this effect to all holders of record of such Preferred stock.

BE IT RESOLVED, That a stock dividend of 50% upon the Common stock of the corporation, payable in Common stock, to all Common stockholders of record as of July 1st, 1927, be and the same is hereby declared.

BE IT RESOLVED FURTHER, That the proper officers of this corporation be and they are hereby authorized to issue Common stock of this corporation of an aggregate par value of $400,000. in accordance with the foregoing resolution.

On December 31, 1926, the company's undivided profits amounted to $731,584.52 and to $462,641.85 on December 31, 1927 (after the issuance of the stock dividend), without considering certain reserves established which may or may not have been proper appropriations of surplus.

Each year from 1922 to 1927, both inclusive, the company paid cash dividends. In 1922 it paid $36,000; in 1923, 1924, $72,000; in 1925, $76,000; in 1926, $80,000; and in 1927, $76,000. The corporation has not been dissolved.

Section 201 (g) of the Revenue Act of 1926,[1] and corresponding sections of prior revenue acts were enacted by the Congress in an attempt to prevent the avoidance of tax upon distributions of corporate earnings, ordinarily to be distributed as dividends and so taxable, by means of redemption and cancellation of stock. It leaves to the Commissioner, in the first instance, and to this Board and the courts to determine what circumstances surrounding the cancellation or redemption of stock shall constitute " such time " and " such manner " as to make those acts and the distribution " essentially equivalent to a distribution of a taxable dividend." Here the parties argue at length upon brief as to the intention with which the stock was issued as a dividend in the first instance; as to whether there was a continuing relation between the issuance and redemption of the stock; and whether those acts were designed and carried out as part of a unified plan to distribute surplus.

These matters are of importance, for, should it appear that it was intended when the stock was issued that the later redemption should be the means of distributing earnings which otherwise would be paid to the stockholders in the form of dividends, and that this plan continued over the interval during which the stock was outstanding so that the issuance and redemption are related to each other as a part of that plan, it would seem that the redemption was " at such time " and in " such manner " as to make it, and the resultant distribution, equivalent to a taxable dividend. In other words, such circumstances would indicate that a cancellation or redemption of outstanding stock had been employed as an artifice by which to avoid the ordinary tax upon a corporate distribution. Cf. *Pearl B. Brown, Executrix*, 26 B. T. A. 901; *Harry A. Koch*, 26 B. T. A. 1025; *Alfred A. Laun*, 26 B. T. A. 764; *Robert R. Meyer*, 27 B. T. A. 44.

But the search for a relationship between the issuance of the stock and its redemption, evidencing a continuing, unified plan to distribute surplus, is not the sole test to which a distribution, coupled with a redemption, may be subjected, and it may fall within the statute even in the absence of those elements. The statute invites scrutiny of the time and manner of the cancellation or redemption of stock. It makes no requirement that the issuance and redemption be related; indeed, under its terms, the manner of the issuance (whether or not as a dividend) is not material. Consequently, we must also scrutinize the redemption and distribution with respect to the time

---

[1] If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subdivision shall apply only if the cancellation or redemption is made after January 1, 1926.

and manner *when they occur*, and the circumstances surrounding them *at that time*. With that in mind, it is quite apparent that a redemption and distribution may fall within the statute although at the time the stock was issued there was no intention to redeem it later as a means of surplus distribution, or plan to avail of such method as a device by which to circumvent the usual tax upon dividends. Thus a stock originally issued, either for payment or as a dividend, as a part of the financial plan of the corporation may be used afterward for the ends sought to be prevented by this section of the statute.

In the case at bar there is no proof of the existence of a relation between the issuance and redemption of the preferred stock evidencing a continuing, unified plan to distribute surplus, nor can we, as respondent urges, reasonably infer its existence from the facts before us, but scrutiny of the time and manner of the redemption or cancellation (in this case, both) of the stock convinces us that they, and the resultant distribution, were essentially equivalent to a taxable dividend. The preferred stock was redeemed at a time when it was supplanted (simultaneously) by an issue of common stock in like amount. Consequently, the company's liability upon its outstanding capital stock was unchanged in amount. The manner of its redemption was by payment in cash, as was the manner of the distribution. The time of the distribution was when the substitution of stock classes occurred and when the company had a substantial amount of accumulated undivided earnings available, so far as this record discloses, for distribution. In our opinion, this case falls fully within the provisions of section 201 (g) and the cancellation and redemption of stock and the distribution to the stockholders are precisely of the sort the Congress intended this section of the statute to control; an opinion which finds support in the committee discussions, prior to enactment, concerning the wording of the section.[2]

There is no evidence here concerning liquidation of the corporation from which we could find that the cash distribution was made in partial liquidation so that this transaction might be taxable under section 201(c) of the Revenue Act of 1926, as petitioner urges. The fact that the company's stock outstanding was continued at the same figure would indicate to the contrary. It may be, as petitioner argues, that the redemption and cancellation of preferred stock and the substitution therefor of common stock was merely a refinancing of the corporation, but, in our opinion, the distribution, coupled with that substitution, was a " definancing " of the company, if we may coin a term.               *Judgment will be entered for the respondent.*

---

[2] Sec. 201 (f), p. 12, Rept. 179, Ways and Means Committee, 68th Cong.:

" The bill changes the existing law by providing for the case in which a corporation *first redeems a portion of its stock and then declares a stock dividend* as well as the case in which the corporation first declares a stock dividend and then redeems a portion of its stock, thus preventing a method of evasion under present law."