HENRY B. BABSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GUSTAVUS BABSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRED K. BABSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52222–52224. Promulgated March 7, 1933.

*George K. Bowden, Esq.,* and *V. J. Heffernan, Esq.,* for the petitioners.

*F. R. Shearer, Esq.,* and *Newton Montgomery, Esq.,* for the respondent.

## OPINION.

GOODRICH: As disclosed by his notices of the deficiency, respondent determined that the amounts received by each of petitioners in 1925 and 1926 from the corporation should be treated, under the provisions of section 201 (g), Revenue Act of 1926, as taxable dividends. By amended answer he avers that, regardless of the applicability of section 201 (g) his determinations were without error for the reason that the amounts so received by petitioners were, in fact and in law, ordinary dividends within the meaning of section 201 (a) of the 1926 Act [1], and taxable as such.

Petitioners contend that the amounts they received were not ordinary dividends, and that the distributions made by the corporation in 1925 and 1926 do not fall within the terms of section 201 (g). They

[1] SEC. 201. (a) The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

contend that the distributions were made in partial liquidation of the corporation under section 201 (h) and that the amounts received were liquidating dividends under section 201 (c), or, in the alternative, that the transactions were in fact a purchase by the corporation from petitioners of its own stock and the amounts received were in payment of the purchase price thereof. They contend further that, no matter what the character of the distributions, section 201 (g) can not be applied to the amounts received in 1925 because the shares then redeemed had been issued, not as a stock dividend, but as the result of purchases thereof for cash and at par by petitioners.

Although in making his determinations of deficiencies respondent assumed that the payments were made in redemption of a part of the stock of the corporation, this he now denies. To found his new view, he divides the transactions into two parts, first, the distribution, and then a surrender of the stock. We find in this record no reason adequate to impel such a division; on the contrary, the weight of the evidence is that the distribution and the stock surrender were planned to be and were effected as connected and dependent, one upon the other, and, in our opinion, they accomplished a redemption of stock for a cash consideration.

But respondent goes further. Even conceding a redemption of a part of the stock of Babson Bros. so that, as defined in this section [2] the amounts here in issue apparently are " amounts distributed in partial liquidation " and are to be treated as in payment in exchange for the stock as provided in paragraph (c), he still contends these amounts are dividends as defined in paragraph (a). He urges that it was not intended that payments such as those in the case at bar be regarded as distributions in liquidation and that, therefore, they fall outside paragraph (h), despite the clear language of that provision. To bottom his claim that these distributions are not truly in liquidation, he argues, first, that there was in fact no liquidation of this corporation; it continued as a going concern. Next, he says the redemption here was not a true stock redemption, but merely a pro rata cancellation of certificates evidencing stock ownership which effected no change in the relation of the stockholders in respect to the capital of the company. Finally, he argues, the issuance of the dividend stock left unchanged the accumulated earnings of the company, and the subsequent stock redemption was merely a distribution of those earnings. Respondent's case may be summed up as advancing the proposition that where corporate

---

[2] SEC. 201. (h) As used in this section the term " amounts distributed in partial liquidation " means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

accumulated earnings have been offset by stock dividends, a distribution in connection with a cancellation or redemption of stock (the company continuing as a going concern) is not a distribution in liquidation within the meaning of the statute, but is a distribution of earnings and a dividend. With that we disagree.

It is difficult to conceive of any corporate distribution which would not be a dividend within the definition of section 201 (a), reading that paragraph alone. However, it is well settled that this provision does not stand alone, but must be taken along with the other provisions having a bearing upon it and the section read as a whole. *Hellmich* v. *Hellman*, 276 U. S. 233. When that is done it seems clear that the intention of Congress was to include, under the general definition, ordinary dividends, as that term is judicially defined and generally understood, and distributions of capital unaccompanied by a reduction in stock, recognizing and preserving the distinction between them, on the one hand, and, on the other, liquidating dividends, and distributions accompanied by a reduction in stock. *Hellmich* v. *Hellman, supra; Edwards* v. *Douglas*, 287 Fed. 919; 269 U. S. 204; *Langstaff* v. *Lucas*, 9 Fed. (2d) 691; aff'd., 13 Fed. (2d) 1022. It seems clear also that, as finally expressed in the revenue acts applicable to the instant case, it was intended that a distribution accompanied by a reduction in stock, accomplished by one of the means specifically prescribed in the statute, is to be regarded as a distribution in liquidation and tax imposed upon it as upon a liquidating dividend, *unless* the circumstances surrounding the stock reduction indicate that the distribution is " essentially equivalent " to an ordinary dividend and should be taxed as such. ·

A review of the legislative history of section 201, or its counterpart, reveals various changes made by the Congress in its efforts to impose a tax upon corporate distributions. Under the earlier acts stock dividends and amounts distributed in liquidation were treated as taxable dividends, although, clearly, they are not ordinary dividends as the term is judicially defined in *Lynch* v. *Hornby*, 247 U. S. 339, and *Lynch* v. *Turrish*, 247 U. S. 221. The Revenue Act of 1918, section 201, imposed a tax upon stock dividends to the extent of earnings accumulated subsequent to February 28, 1913, at surtax rates, but subjected to tax, as other gains, any profit upon liquidation of corporate stock and treated the amounts so distributed as payments in exchange for the stock. But the decision in *Towne* v. *Eisner*, 245 U. S. 418, held that stock dividends did not represent income to the stockholder and the decision in *Eisner* v. *Macomber*, 252 U. S. 189, held that the Congress was without power to impose a tax without apportionment, upon stock dividends for the reason that such a dividend distributes no income to the stockholder, but, on the contrary,

serves to capitalize the earnings accumulated and to make them unavailable for distribution. (See also *Hugh R. Wilson*, 3 B. T. A. 957) However, such a capitalization of earnings does not serve to "earmark" them. *Edwards* v. *Douglas, supra; Walker* v. *Hopkins*, 12 Fed. (2d) 262; *J. T. Hedrick*, 24 B. T. A. 444. Thereafter, the provisions subjecting distributions in liquidation to tax at both normal and surtax rates were upheld by the decision in *Hellmich* v. *Hellman, supra*, the court pointing out the distinction between ordinary and liquidating dividends, and the intention of Congress to preserve it. (See also *Langstaff* v. *Lucas, supra; John K. Greenwood*, 1 B. T. A. 291; *J. E. Chandler*, 3 B. T. A. 146)

So, when Congress came to consider the Revenue Bill of 1921 [3] it had been denied the power to tax stock dividends, but not the power to tax distributions in liquidation. As adopted, the 1921 Act omitted stock dividends from the definition of dividends (section 201 (a)) and provided (c) that distributions made otherwise than out of earnings, whenever accumulated, should be applied against the cost basis of stock "for the purpose of ascertaining the gain derived or the loss sustained from the sale or other disposition of the stock or shares by the distributee." Thus, being aware of the decision in *Eisner* v. *Macomber, supra*, and knowing that stock dividends served to capitalize accumulated earnings and make them unavailable for distribution, the Congress enlarged the provisions relating to distributions in liquidation, apparently for the purpose of imposing a tax, at both normal and surtax rates, upon the profit derived from distribution by means of stock reduction, of earnings capitalized through stock dividends. And it went further, to the end that, if the circumstances justified, it might impose a tax upon the whole of the amount distributed—not merely upon the gain—for this act contained the forerunner of the statutory provisions under which the instant case arises, reading as follows:

Sec. 201. (d) A stock dividend shall not be subject to tax, but if after the distribution of any such dividend the corporation proceeds to cancel or redeem its stock at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend, the amount received in redemption or cancellation of the stock shall be treated as a taxable dividend to the extent of the earnings or profits accumulated by such corporation after February 28, 1913.

In the 1924 Act, section 201 (d) above quoted was extended and became section 201 (f). Also, the provisions relating to distributions in complete liquidation were extended to include those made in partial liquidation, because the Treasury had construed the existing

---

[3] Report No. 350, 67th Cong., 1st sess., House Committee on Ways and Means, p. 8. Report No. 275, 67th Cong., 1st sess., Senate Committee on Finance, p. 9.

law as taxing them, not as capital gains, but as dividends. Part of the explanation of the report [4] follows:

The theory of liquidating dividends is extended to distributions in partial liquidation. If a corporation retires a portion of its capital stock, the transaction is treated, from the point of view of the stockholder, as a sale of his stock. If the corporation distributes an amount in partial retirement of its capital stock, the amount thereof is to be considered as a return of capital, and taxable only if, as, and to the extent that it exceeds the basis of the stock.

So paragraph (c) came into the act, and with it paragraph (g), defining the term " amounts distributed in partial liquidation," and both these provisions were carried over into the Act of 1926.

The chief change made to section 201 by the 1926 Act was to divide paragraph (f) into two subdivisions and to extend the provisions to cases *not* involving stock dividends, deemed necessary because:

Under existing law the corporation could buy from the stockholders, for cash, one-half of the stock held by them and cancel it without making the stockholders subject to any tax. Yet this action, in all essentials, would be the equivalent of a distribution through cash dividends of the earned surplus. The amendment proposed to this subdivision is intended to make clear that such a transaction is taxable.[5]

Thus opportunity was afforded, if the circumstances justified it, to tax the whole of amounts distributed in a reduction of stock, whether the stock had been bought and paid for, or was received as a dividend.

It is quite apparent that the Congress was aware of the effect of the decision in *Eisner* v. *Macomber, supra,* and also that, by enlarging the provisions relating to treatment of distributions in liquidation and in laying the definitions thereof, it was making possible, by means of cancellation or redemption of a part of the stock of a corporation, a distribution of earnings previously accumulated and capitalized by stock dividends. That fact is reflected by the progressive changes in the revenue acts and the discussions of problems which they were designed to meet. It lay within the power of the Congress to deal with this matter of distribution as it saw fit. It might have provided that all distributions made in connection with stock cancellations or redemptions from corporate funds in excess of paid-in capital, acquired after February 28, 1913, no matter how dealt with, should be treated as dividends. This it did not choose to do. Instead, it framed the definition of distributions in liquidation in paragraph (h) to include those accompanied by a reduction in

---

[4] Report No. 179, 68th Cong., 1st sess., House Committee on Ways and Means, p. 11. Report No. 389, 68th Cong., 1st sess., Senate Committee on Ways and Means, p. 11.

[5] Report No. 1, 69th Cong., 1st sess., House Committee on Ways and Means, p. 5.

stock (leaving under the definition of dividends in paragraph (a), ordinary dividends and distributions not so accompanied; see *Edwards* v. *Douglas, supra*), and then provided (paragraph (f), 1924 Act, paragraph (g), 1926 Act) that such distributions should be treated as dividends if the time and manner of the stock reduction indicated that the distribution was " essentially equivalent to the distribution of a taxable dividend." Thus, the Congress left to the Commissioner, in the first instance, and to this Board and the courts, the duty of scrutinizing such transactions and determining what circumstances surrounding the cancellation or redemption of stock shall constitute " such time " and " such manner " as to make those acts and the distributions " essentially equivalent to a taxable dividend." *Annie Watts Hill*, 27 B. T. A. 73.

It seems clear that these provisions were designed to cover transactions such as those occurring in the case now at bar, and therefore we find no merit in respondent's contention that the distributions here were dividends as defined in paragraph (a). Plainly, they were not " ordinary dividends " as that term is judicially defined (*Hellmich* v. *Hellman, supra; Langstaff* v. *Lucas, supra*). There was a reduction in stock (see *Edwards* v. *Douglas, supra*)—" a complete cancellation or redemption of a part of its stock "—and in such case the statute provides, in terms which admit of no ambiguity, that the payments made in connection therewith are " amounts distributed in partial liquidation " and shall be treated in the manner prescribed in paragraph (c). Moreover, the corporation was liquidating a considerable part of its assets and was contracting its business, though it did not dissolve. We conclude, therefore, that the transactions here in issue constituted a partial liquidation of the corporation and that the distributions were made in connection therewith. Consequently, it remains only to determine whether paragraph (f) in the 1924 Act, or paragraph (g) in the 1926 Act, section 201, or both, are applicable to these distributions.

At the onset of our consideration as to the applicability of these provisions we are met by petitioners' contention that the distributions of 1925, because of the facts surrounding them, are specifically freed from the provisions of the section applied to them by respondent by the very language of that section. Section 201 (g) of the 1926 Act differs in effect from paragraph (f) of the same section of the 1924 Act only in that the first named contains a parenthetical clause, not found in the earlier act, expressly applying its provisions to stock not issued as a stock dividend, but then (by the last sentence) only if the cancellation or redemption is made after January 1, 1926. This limitation, argue petitioners, makes the section inapplicable to the 1925 distributions because the shares redeemed in that year had not been issued as a stock dividend, but had been

purchased by them, and were canceled and redeemed prior to January 1, 1926. But, asuming the facts to be as petitioners contend, that sentence upon which they rely makes inoperative the whole of this subdivision of the 1926 Act as to the distributions in the year 1925. Section 1200 (a) of the 1926 Act repeals, excepting certain sections not material here, Title II (called Income Tax) of the 1924 Act, which includes section 201. Section 286, Revenue Act of 1926, provides that Title II of that act, again with certain exceptions, shall take effect as of January 1, 1925. So, unless a specific contrary provision appears in an individual subdivision, the Revenue Act of 1926, at least that part of it with which we are concerned here, was in force during the year 1925. But, under the facts here as petitioners claim them to be, the last sentence of section 201 (g) is such a specific contrary provision. It is as follows:

In the case of the cancellation or redemption of stock not issued as a stock dividend this subdivision shall apply only if the cancellation or redemption is made after January 1, 1926.

The effect of the limitation in the sentence, then, is to postpone to January 1, 1926, the application of this provision of the Act of 1926 to a transaction occurring under the facts as we have them here and, consequently, the contention that the 1925 distributions can not be treated as essentially equivalent to the distribution of a taxable dividend because of the terms of the very subdivision providing for such treatment, is unsound. However, the fact that the limitation of paragraph (g) makes inoperative the 1926 Act to the distributions occurring in 1925 does not mean that there was no statutory authority for respondent's determination. Section 1200 (b), Revenue Act of 1926 (last sentence), continues in effect any provision of the 1924 Act imposing a tax and repealed by the later act until the tax imposed by the 1926 Act takes effect. It is clear, therefore, that section 201 (f), Revenue Act of 1924, was in force and effect during 1925 with respect to the distributions made to petitioners in that year and was sufficient statutory authority for respondent's determination.[6] Since paragraph (f) may be applied where, either before or after a distribution in connection with a cancellation or redemption of stock, a stock dividend has been issued and, since, in the case at bar, stock dividends were issued, it appears that the terms of the statute offer no basis upon which to rest a distinction between the transactions in 1925 and those occurring in 1926 and we pass to the general consideration of respondent's deter-

---

[6] That this result was intended by the Congress is disclosed by the following excerpt from Senate Report No. 52, 69th Cong., 1st sess., p. 15: "The committee recommends that the provisions of the 1924 act in this respect remain in effect during the calendar year 1925 and that the change in the law should become effective only as of January 1, 1926."

mination that these distributions fall within that subdivision and should be treated as taxable dividends in the hands of petitioners.

Beyond our previous comment herein, we see no necessity for enlarging the discussion found in the earlier decisions of the purpose and effect of section 201 (f), 1924 Act, and the corresponding provisions of other revenue acts. See *Alfred A. Laun*, 26 B. T. A. 764; *Pearl B. Brown, Executrix*, 26 B. T. A. 901; *Harry A. Koch*, 26 B. T. A. 1025; *Robert R. Meyer*, 27 B. T. A. 44; *Annie Watts Hill, supra*. These cases lay as one test for determining whether a distribution in cancellation or redemption of stock falls within the provisions of the statute, the existence of a relation between the issuance and redemption of the stock which evidences a continuing plan to effect by this means a distribution of corporate earnings, freed from the usual incident of tax upon ordinary dividend distributions. In the case at bar we have no evidence of such a relation; indeed, respondent, in his deficiency notices, states:

> The two transactions (issuance and redemption) were widely separated in point of time and unless shown to have been connected in their plan or purpose they should be treated separately. There appears to be no evidence of any connection between the declaring of the stock dividend in 1922 and the redemption of the preferred stock in 1925, and these transactions must be considered as separate and distinct.[7]

Nor does the record before us contain evidence from which we might reasonably infer the existence of a continuing plan to distribute corporate earnings by means of distributions made in connection with cancellation or redemption of stock, rather than by the declaration of ordinary dividends. Cash dividends in substantial amounts were paid in eight of the fifteen years since 1912 of which we have evidence; in one year when cash dividends were omitted the company sustained a loss from its operations, and in another made but a small profit. And from the facts concerning the company's plans for expansion into new lines of merchandise and into new policies of operation and ownership, necessitating an increase in capital structure, we can not but conclude that the stock dividends were issued to meet legitimate business demands existing at that time and not for the ends sought to be prevented by the statute.

But, as another test of the applicability of the statute to transcations such as these before us, we must scrutinize the redemption and distribution with respect to the time and manner when they occur, and the circumstances surrounding them at that time. *Annie Watts Hill, supra*. Such scrutiny here reveals nothing to indicate

---

[7] The deficiency notices contain no explanation for the erroneous statements that the stock dividend was declared in 1922 and preferred stock was redeemed in 1925. The facts are that stock dividends were declared in 1920 and in 1923, and no preferred stock ever was issued by this company.

that the distributions, coupled with the redemptions, were "essentially equivalent to the distribution of a taxable dividend." They were made at a time when the company, having found that its program of expansion resulted in increased business with decreased profit, had decided to contract sharply, discontinue many of its merchandise lines and return to its old policies of operation on a smaller scale. The reasons assigned for the redemptions seem to us sufficient and compelling and in nowise related to an attempt to distribute corporate earings by an artifice to escape the usual tax thereon. Therefore, under the tests laid by the decisions (and no other is suggested) we conclude that the distributions received by petitioners in 1925 and 1926 in connection with the cancellation and redemption of their stock of Babson Bros. fall without the terms of sections 201 (f), Revenue Act of 1924, and 201 (g), Revenue Act of 1926, and that respondent erred in including the amounts so distributed in the incomes of these petitioners as taxable dividends.

The parties, by counsel, have stipulated that, if we find these distributions are taxable as distributions in partial liquidation of the corporation and not as dividends subject only to surtax rates, we may enter orders of redetermination to the effect that the several petitioners have overpaid their respective income tax liabilities for the years before us as follows:

|  | 1925 | 1926 |
| --- | --- | --- |
| Henry B. Babson | | $2,064.17 |
| Gustavus Babson | $5,416.66 | 2,414.51 |
| Fred K. Babson | 5,416.00 | 5,451.00 |

Since we have so concluded, we need not consider petitioners' alternative contention.

Reviewed by the Board.

> *Judgment will be entered for petitioners as above set out.*