SHELBY H. CURLEE, TRUSTEE, VIRGIL P. RANDOLPH TRUST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48833, 54335. Promulgated July 27, 1933.

*F. M. Curlee, Esq., Stanley S. Waite, Esq.,* and *Abraham Lowen haupt, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

### OPINION.

LEECH: These two proceedings were not formally consolidated for hearing and decision, but were heard together. The facts were stipulated in one stipulation covering both cases. Accordingly, they will be disposed of together.

Petitioners seek redetermination of deficiencies in income tax of the Virgil P. Randolph Trust for the calendar year 1926 in the amount of $10,280.39 under Docket No. 48833, and for the calendar year 1927 in the amount of $47,769.61 under Docket No. 54355.

We find the facts as set out in the formal stipulation filed by the parties in this proceeding, which is incorporated herein by reference. Briefly, Virgil P. Randolph transferred on February 1, 1922, to the petitioner Shelby H. Curlee, as trustee, 865 shares of common

stock of the Curlee Clothing Co. By the terms of the trust inden-
ture the trustor reserved no right to revoke the trust, which pro-
vided for the payment by the trustee to the trustor of " all the income
from said trust " during the latter's life and after his death to his
wife, son, and cousin. The interest of the son in the corpus was
to be paid over to him, one half when he attained 30 years of age
and the balance at 35 years of age.

The March 1, 1913, fair market value of the stock of the Curlee
Clothing Co. so received by this petitioner was $200 per share. Of
the 865 shares received, 852 had been acquired by Virgil P. Randolph
prior to March 1, 1913, and 13 shares were acquired by him in 1919
at a cost of $2,925. This last transaction involved only the stock-
holders of the Curlee Clothing Co. It was a ratable distribution
of stock, and the price at which acquired bore no relation to the
market value of the stock at that time.

At the date of the creation of the trust the common stock of the
company consisted of 5,370 shares of the par value of $100 each. The
preferred stock consisted of 2,500 shares of the par value of $100
each, which preferred stock was entitled to dividends at the rate of 7
percent per annum and no more, cumulative if not paid in any year.
The surplus of the company amounted to $1,727,705.85 on September
30, 1921, the closing of its fiscal year preceding the date of the crea-
tion of the trust. The surplus of the company was $2,514,173.96 on
September 30, 1922.

During the times hereinbefore mentioned and up to June 16, 1925,
the Curlee Clothing Co. was operating as a Missouri corporation.
On June 16, 1925, the authorized capital stock was 6,000 shares of
common stock of the par value of $100 per share, of which 5,370
shares were issued and outstanding. On the last named date the
capital stock of the company was $537,000, and its surplus was
$4,605,118.51. All of this surplus was earned subsequent to March 1,
1913.

On June 16, 1925, the Curlee Clothing Co. was reorganized as a
Delaware corporation. The reorganization was effected in the fol-
lowing manner and form: The Delaware corporation was organized
under the name of Curlee Clothing Co., with an authorized capital
stock of 6,000 shares of common stock without par value. On June
16, 1925, the Missouri corporation transferred to the Delaware
corporation all of its assets. In consideration therefor the Delaware
corporation assumed all of the obligations of the Missouri corpora-
tion and issued ratably to the stockholders of the Missouri corpora-
tion, share for share, the capital stock of the Delaware corporation,
aggregating 5,370 shares. The Missouri corporation was immedi-
ately dissolved. The Delaware corporation still exists and operates

as Curlee Clothing Co. In the reorganization all of the net worth of the company, amounting to $5,142,118.51, was capitalized and was represented by the 5,370 shares of common stock without par value issued by the Delaware corporation. No surplus was entered on the books of the Delaware corporation, the net value of the assets received for its capital stock being reflected in the capital account, pursuant to the resolution of its board. As provided by the reorganization plan there were issued to Shelby H. Curlee, as trustee for Virgil P. Randolph, 865 shares of the capital stock of the Delaware corporation.

In January 1926, the Delaware corporation reorganized, reduced its capital stock and readjusted its capital structure under authority of a vote of its stockholders. By this reorganization the no par value common stock was retired and replaced by an issue of the same number of shares of common stock of a par value of $100 a share and 25,000 shares of preferred stock of a par value of $100 per share. As a result of this reorganization petitioner received in place of the 865 shares of no par value common stock held by him 865 shares of the newly authorized common stock and 4,026 shares of the newly authorized preferred stock and $57.50 in cash in lieu of a fractional share. The value of the newly authorized preferred stock when received by petitioner was $100 per share and the value of the common stock was $491.50 per share.

On January 1, 1927, the Curlee Clothing Co. redeemed one half the preferred stock outstanding, amounting to 12,500 shares, at the fixed redemption price of $105 per share and charged $100 per share to the capital account and the premium of $5 per share to surplus. On July 1, 1927, the company redeemed the remainder of its outstanding preferred stock at the same redemption price, which was similarly charged to capital and surplus.

The net income of the Delaware corporation from the date of its organization to September 30, 1926, amounted to $716,263.85, as shown by its books. It paid a dividend January 15, 1926, on the no par value common stock amounting to $107,400 and dividends on the new issue of preferred stock as follows: on April 1, 1926, in the sum of $43,645.75; on July 1, 1926, in the sum of $43,599.50; on October 1, 1926, in the sum of $42,918.75; from November 1926, to January 3, 1927, amounts totaling $41,519.43; and from January 3, 1927, to and including July 1, 1927, amounts totaling $38,724.32. Its net income for the year ending September 30, 1927, as shown by its books, amounted to $551,615.35. On September 30, 1927, it credited to surplus the sum of $4,439.39, excess reserve and excess expenses charged in its accounts.

Immediately after the reorganization and readjustment of capital in January 1926, the petitioner as trustee sold 225 shares of the new issue of common stock held by him for a cash consideration of $491.50 per share, and 240 shares of the new common stock he exchanged for 1,179 shares of the new preferred stock and $60 in cash. At the time of the redemption of this preferred stock in January 1927, petitioner as trustee held 400 shares of the common stock and 4,026 shares of the preferred stock of the Delaware corporation, which, with the 465 shares of common stock previously sold or exchanged by him, had been acquired in an exchange for the stock of the Missouri corporation through the reorganization above described. At that time he also owned 1,179 shares of preferred stock acquired in exchange for common stock making his total holdings of preferred stock 5,205 shares. On January 3, 1927, 2,603 shares of this preferred stock were redeemed and on July 1, 1927, the remaining 2,602 shares were redeemed at $105 per share.

In determining the deficiency for 1926 respondent computed gain to petitioner upon disposition in that year of 465 shares of common stock of the Curlee Clothing Co., held by him in trust, upon the basis of the trustor, Virgil P. Randolph, fixing a March 1, 1913, value of $139.543 per share. Petitioner assigns error upon this determination, contending that the value of the stock on February 1, 1922, the date acquired by him under the trust instrument, is the proper basis for computing gain, but that in any event the March 1, 1913, value of the stock was in excess of $139.543 per share.

Respondent has treated the situation as one controlled by section 204 (a) (3) of the Revenue Act of 1926.[1] It is petitioner's contention that this section can not control as to a trust created prior to the effective date of the Revenue Act of 1924, because, he insists, the latter act, and not the Revenue Act of 1921, was the first enactment providing that the basis of the trustee for loss or gain under such facts as here exist should be that of the trustor.

This position is untenable, since section 202 (a) (2) of the Revenue Act of 1921[2] requires that upon the present facts the basis for the trustee shall be the same as for the trustor.

It is argued by petitioner that the transfer here in question was not a gift but a transfer in trust. We fail to see in the present case

[1] Sec. 204 (a) (3). If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by bequest or devise) the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made. The provisions of the paragraph shall not apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402 of the Revenue Act of 1921, or in subdivision (c) or (f) of section 302 of the Revenue Act of 1924, or in subdivision (c) or (f) of section 302 of this Act.

[2] Sec. 202 (a) (2). In the case of such property, acquired by gift after December 31, 1920, the basis shall be the same as that which it would have in the hands of the donor

a distinction. A gift effected by a transfer in trust is none the less a gift. *Burnet* v. *Guggenheim*, 287 U.S. 587. The transfer here is without actual consideration in money or money's worth to a trustee to hold for beneficiaries. To the beneficiaries it assuredly represented a gift within the purview of section 202 (a) (2) of the Revenue Act of 1921 and the holding of such gift in trust does not change its character or give to the trustee a different basis for computing gain or loss from that imposed upon the donee. In this case we can say, as did the court in *Brewster* v. *Gage*, 280 U.S. 327, that there is nothing in the act to indicate a purpose to establish different bases for the trustee and the beneficiary for computing gain or loss. In the present situation such interpretation would be more strained than the one there rejected, as it would assume a cost basis in the trustee of the value at the time received and force the beneficiary, upon distribution, to revert to the cost basis of the donor. *New York Trust Co., Trustee*, 27 B.T.A. 1127.

The retroactive provision of section 204 (a) (3) of the Revenue Act of 1926 to include transactions of this character subsequent to December 31, 1920, was therefore within the power of Congress to enact, since the rights under such transfers accrued with notice of the obligation assumed under existing law. *Taft* v. *Bowers*, 278 U.S. 470; *United States* v. *Phellis*, 257 U.S. 156.

Petitioner argues further that section 204 (a) (3) does not control as the last sentence of that paragraph excludes the present situation from its operation. The sentence in question reads:

\* \* \* The provisions of this paragraph shall not apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402 of the Revenue Act of 1921, or in subdivision (c) or (f) of section 302 of the Revenue Act of 1924, or in subdivision (c) or (f) of section 302 of this Act.

The sections of the three revenue acts referred to in the quoted sentence are those defining the gross estate of a decedent for purposes of estate tax and the particular paragraphs mentioned are those including in the estate, interests which the decedent has transferred in trust, or otherwise, to take effect in possession or enjoyment at or after death, and property passing under general powers of appointment exercised by the decedent by will or deed executed in con-

---

or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner. In the case of such property acquired by gift on or before December 31, 1920, the basis for ascertaining gain or loss from a sale or other disposition thereof shall be the fair market price or value of such property at the time of such acquisition.

templation of or to take effect in possession or enjoyment at or after death.

The present trust was irrevocable and the interests passing thereunder vested. No interest created was postponed or will take effect in possession or enjoyment at or after the trustor's death and thus be subject to inclusion in his estate for purposes of estate tax. *Burnet v. Northern Trust Co.*, 283 U.S. 782; *May v. Heiner*, 281 U.S. 238. Nor is there any fact or circumstance shown indicating the transfer to be one made in contemplation of death. The interests conveyed by the trust instrument are clearly not such as are excluded from the operation of section 204 (a) (3) by the last sentence of that paragraph.

We sustain respondent's action in computing gain upon the disposition of common stock in 1926 upon the basis applicable to the trustor. Upon the issue as to the March 1, 1913, fair market value of the stock, the parties have stipulated that such value was $200 a share. This value should be used in recomputing the deficiency for that year.

The issue raised in respect to the deficiency determined for 1927 is upon respondent's action in treating the redemption of preferred stock in that year by the corporation as equivalent to the payment of a dividend within the meaning of section 201 (g) of the Revenue Act of 1926.[3]

The facts are that petitioner in that year held 5,205 shares of the Curlee Clothing Co. Of this, 4,026 shares had been received, together with 865 shares of common stock of a par value of $100 per share, in exchange upon a recapitalization of the corporation, for 865 shares of no par value common stock. The balance of the preferred stock, or 1,179 shares, had been acquired in 1926 by petitioner in exchange for 240 of the 865 shares of common stock received by him in the aforesaid recapitalization. All of this preferred stock was redeemed by the corporation in 1927 at the fixed redemption price of $105 per share.

In applying section 201 (g), *supra*, one. test to be deduced from the decided cases is—where, from the time, manner and other circumstances of both the distribution of a stock dividend and its later redemption or cancellation, a relation between these events is found evidencing a continuing preconceived plan, the intent of which is to effect a distribution of corporate earnings accumulated since February

---

[3] SEC. 201 (g). If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subdivision shall apply only if the cancellation or redemption is made after

28, 1913, freed from tax upon ordinary dividends, such distribution is to be " treated as a taxable dividend " and taxed as such. *Henry B. Babson*, 27 B.T.A. 859; *Louis Rorimer*, 27 B.T.A. 871; *T. Pierre Champion*, 27 B.T.A. 1312; *Robert R. Meyer*, 27 B.T.A. 44; *Pearl B. Brown, Executrix*, 26 B.T.A. 901; *Annie Watts Hill*, 27 B.T.A. 73; affd. 66 Fed. (2d) 45.

Let us apply this test to the facts disclosed by the present record, keeping in mind that the burden of proof is upon petitioner to establish an absence of design or artifice in the issuance of the preferred stock and its later redemption.

The record shows that in 1926 the corporation had a very large surplus accumulated subsequent to March 1, 1913. Early in the year 1926 it capitalized this by issuance of preferred stock. This issuance was effected by redemption of all of the no par value common stock and issuance in its place of the same number of shares of new common stock of a par value of $100 per share and 25,000 shares of preferred stock, distributed ratably to holders of common stock. The preferred stock so received represented a stock dividend. *Pearl B. Brown, Executrix, supra*. Twelve months later half of this preferred stock was redeemed at $105 per share, and the balance was similarly redeemed at the end of the next six months. The interval of time was comparatively short between the issuance and redemption of the stock dividend and its redemption was at the full redemption price, effecting a liquidation and distribution of the total amount of earnings allocated to this stock and $125,000 of additional earnings. In the absence of a reasonable explanation as to why this stock was so promptly redeemed, or facts tending to show an absence of connection between the issuance and redemption, petitioner failed, we think, to rebut the presumption of correctness with respect to the respondent's determination. *Annie Watts Hill, supra; Henry B. Babson, supra; Pearl B. Brown, Executrix, supra*.

It is evident that if this issuance and later redemption were entirely disconnected transactions and there was no design on the part of the corporation in paying the stock dividend to liquidate it later and avoid tax liability for its stockholders, then the stock dividend was either issued through an error of business judgment, later realized, or conditions facing the corporation changed materially during the short period between issuance and redemption, making it unnecessary to retain in the business earnings which had been thought necessary to its operation twelve months before. If either of these conditions were responsible for the redemption, the necessary proof thereof was available to this petitioner. The facts must have been within his knowledge, as he was president of the corporation and occupied this position both at the time the stock was issued and later when it was redeemed.

However, on this question of the intent or purpose of the corporation the record is silent. There is no disclaimer on the part of corporate officers of design or artifice in the issuance or redemption of this stock to effect the distribution of earnings to the stockholders. There is no attempt on the part of petitioner to explain the reason for the prompt redemption.

It is true that petitioner has proved that subsequent to the issuance of the stock dividend certain of the large stockholders disposed of the issued stock and others, including petitioner, disposed of common stock. It is argued that this action is inconsistent with a plan on the part of the corporation conceived at the time of the issuance of the preferred stock later to redeem it. Aside from the fact that little weight could be attached to the acts of corporate stockholders as determining the matter of intent on the part of the corporation, we can not agree that these facts are necessarily inconsistent with a design on the part of the corporation in the issuance of this stock to redeem it the following year. We are not advised as to the price realized for the stock disposed of and, as far as we know, such sales may have been made with full knowledge on the part of the stockholder that the stock would be redeemed and the full redemption value then realized by him.

It is further contended by petitioner that, irrespective of the intent of the corporation in the issuance of the stock in question, its later liquidation can not be equivalent to the distribution of a dividend and consequently within section 201 (g), for to be a dividend it must be such both as to the corporation and to each stockholder. It is emphasized that in the present case at the time of liquidation many of the owners of common stock had sold their holdings and consequently the cash distributed to them on liquidation of their preferred stock could not represent a dividend on common stock which they no longer owned.

In the imposition of the tax by this section, as under its prototypes in varying refinements and limitations, occasioned by necessities of administration, constitutional restrictions and legislative desires, Congress imposed a tax upon certain corporate earnings, distributed by a redemption or cancellation of stock dividends by which these earnings had been capitalized. Cf. *Henry B. Babson, supra; Pearl B. Brown, Executrix, supra; Annie Watts Hill, supra.* Although, certainly, the taxes are imposed upon amounts so distributed in the hands of recipient stockholders, the distribution when thus effected is of *corporate earnings*, which can be and are distributed *only* by the corporation and not the stockholders, who are separate entities. Cf. *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415. The taxable status of these distributions under the

act, therefore, is fixed by the executed purpose of the corporation, in the determination of which the identity of the stockholders is in no way material. Under petitioner's theory, a corporation with deliberate intent to distribute surplus, could issue a stock dividend, cause the holder of one share of common stock to sell it, then liquidate the stock dividend and be held outside the provisions of section 201 (g), a result in distinct opposition to the purpose of the questioned section. Cf. *Henry B. Babson, supra.* Furthermore, this theory assumes that the distribution must in fact meet the legal test of a dividend to fall within section 201 (g). If this were sound, that provision of the statute would be surplusage, as such a dividend would be taxable under other provisions. Cf. *United States* v. *Katz,* 271 U.S. 354. The purpose of this section is to tax distributions which effect a cash distribution of surplus *otherwise* than in the form of a legal dividend. Cf. *Henry B. Babson, supra.*

Upon the record, in so far as the redemption of 4,026 shares of preferred stock by petitioner in 1927 is concerned, we conclude the amount received for such shares is taxable as a dividend under section 201 (g), *supra. Avery* v. *Commissioner,* 22 Fed. (2d) 6; *Bishoff* v. *Commissioner,* 27 Fed. (2d) 6. As to the amount received upon redemption of the balance of 1,179 shares a different situation exists, as this stock was acquired by petitioner in 1926 in a transaction giving rise to gain or loss and the basis for computing the gain on this stock upon its redemption is its cost to petitioner when acquired, or $100 per share.

It follows that in redetermining the deficiency for 1926, the computation of gain upon the disposition in that year of common stock of the Curlee Clothing Co. by petitioner should be made without diminishing the cost of such stock by allocation of a proportionate amount to the preferred stock issued. Such issuance was only an incident to the distribution of earnings. This stock can not be treated as capital for 1926 and distributed earnings for 1927. True, the circumstances attending the redemption or cancellation, as well as the distribution of the redeemed or canceled stock dividends, must satisfy the disputed provision, as stated. But when so satisfied, amounts thus received are impressed with the character and for the purposes therein specified as of the date of its distribution in the form of a stock dividend, although not taxable thereunder until the year of redemption. Cf. *W. E. Guild,* 19 B.T.A. 1186; *James P. Gossett,* 22 B.T.A. 1279. To hold otherwise would not only prevent petitioner's recovery of capital but would throw wide the door to tax evasion, by permitting a corporation, with intent to distribute earnings, to issue a stock dividend which is thereupon sold by the recipients to a third party for the anticipated redemption price, imme-

diately redeem it and pay the proceeds to the stockholder as the purchase price of the stock. This result would likewise be repugnant to the purposes of the enactment. Cf. *Henry B. Babson, supra.*

Petitioner insists that the necessary result of a determination that the distribution of the stock dividend and its later redemption was equivalent to payment of a cash dividend is that the amount thereof would not be taxable to this petitioner, as it would then represent distributable income of the trust, taxable to the beneficiary, Virgil P. Randolph, under section 219 (b) of the Revenue Act of 1926.[4]

Income of the trust within contemplation of the trust instrument and taxable income are not one and the same. The income of the trust subject to distribution to the beneficiary is the current return upon the corpus received by the trustee and not the gains and profits realized upon a disposition of such corpus, although the latter constitute income of the trust subject to tax. We have decided, not that the liquidation of the stock dividend was income and therefore distributable under the terms of the trust agreement, but that, for the special purposes, only, of section 201 (g), *supra*, this stock dividend and liquidation shall be " treated as a taxable dividend " to the trust and therefore taxed as such. Cf. *Pearl B. Brown, Executrix, supra.* Its permissible deduction in computing the taxable net income of the trust depends, not upon its taxable status attaching by reason of 201 (g), but upon its character as " income * * * which is to be currently distributed " under the trust instrument authorizing the distributions. *Hartford-Connecticut Trust Co.* v. *Eaton*, 29 Fed. (2d) 840; affd., 36 Fed. (2d) 710; *State Savings Loan & Trust Co., Trustee*, 25 B.T.A. 228; affd., 63 Fed. (2d) 482. Without the interposition of section 201 (g), no serious argument could be made that this stock dividend, so received, constituted income and was therefore distributable as such under the trust. *Robert* v. *Mercantile Trust Co.* (Mo., 1929), 23 S.W. (2d) 32; *Hayes* v. *St. Louis Union Trust Co.* (Mo., 1927), 298 S.W. 91; 56 A.L.R. 1276. But this statutory provision in no wise changed the trust agreement or the intention of the trustor evidenced thereby. Cf. *Butterworth* v. *Commissioner*, 63 Fed. (2d) 944. There is no indication that the amount for which deduction is here claimed was considered or treated by the parties in interest as distributable income. So far as the purposes of the trust are concerned, the distribution represents merely what it

---

[4] Sec. 219 (b). Except as otherwise provided in subdivisions (g) and (h), the tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in sec. 212, except that—

* * * * * * *

(2) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries. * * *

was in fact, the distribution of a stock dividend and the subsequent redemption of such stock. Cf. *Annie Watts Hill, supra.* We conclude that petitioner is not entitled to deduct the taxable amount of the distribution under section 219 (b) of the Revenue Act of 1926 in computing the net income of the trust for the calendar year 1927.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL dissents.