PEARL B. BROWN, EXECUTRIX OF THE ESTATE OF FRANK A. BROWN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY A. BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47677, 48136. Promulgated August 29, 1932.

*Herbert Pope, Esq., Benjamin M. Price, Esq.,* and *Thomas C. Strachan, Jr., Esq.,* for the petitioners.
*Chester A. Gwinn, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The respondent determined deficiencies in income taxes for 1925 against the petitioners in the amounts of $15,976.18 and $13,405.73, respectively, by treating as dividends taxable under section 201 (g), Revenue Act of 1926, amounts received in 1925 by the petitioner's decedent in Docket No. 47677, and the petitioner in Docket No. 48136, (both being herein called petitioner), upon the cancellation or redemption of shares of preferred stock of the Squire Dingee Company, which were received by them in 1922 by virtue of an increase in the capital stock of that company. The facts were stipulated as follows:

1. The taxes in controversy are income taxes for the year 1925 in the amounts of $13,405.73 and $15,976.18.

2. On May 21, 1925, Squire Dingee Company redeemed at $37.325 per share its entire issue of 5,000 shares of 7% preferred stock having a par value of $100 per share by paying to petitioner Harry A. Brown $91,446.25 on the surrender of 2,450 shares of said preferred stock then held by him, and by paying to petitioner Frank A. Brown, $95,178.75 on the surrender of 2,550 shares of said preferred stock then held by him.

3. The deficiencies claimed by respondent are for the amount of income tax payable by petitioners in event the sums of $91,446.25 and $95,178.75 were received by them in payment of a dividend representing a distribution of earnings or profits accumulated by Squire Dingee Company after February 28, 1913.

4. Squire Dingee Company was at all times herein mentioned and now is an Illinois corporation. At all times prior to December 31, 1922, said company was authorized to issue and had issued as its only capital stock 1,000 shares of common stock having a par value of $100 per share. Prior to December 31, 1922, said company was authorized by its corporate charter to conduct and did conduct the business of preserving, packing and selling pickles.

5. Prior to March 1, 1913, petitioners acquired the capital stock of Squire Dingee Company at a cost to them that was not in excess of the value of said stock on March 1, 1913. At all times after the acquisition by them of the entire capital stock of said company to and including the calendar year 1925, petitioners owned, and they or their appointees held, the entire capital stock of said company.

6. At all times material to this cause Frank A. Brown owned 51% and Harry A. Brown owned 49% of the capital stock of Squire Dingee Company.

7. On December 31, 1922, the value of the assets as shown on the books of the company was increased to $1,500,000 by writing up in accordance with an

appraisal the physical assets of the company in the amount of $398,855.50 and by showing as an asset of the company trade names and brands at a value of $146,328.79. Prior to said increase the aggregate value of the assets of Squire Dingee Company as shown by its books was in excess of the liabilities and capital stock of said company by the amount of $854,815.71.

8. At a meeting of the Board of Directors of Squire Dingee Company held December 15, 1922, the following resolutions were adopted:

" WHEREAS the aggregate value of the assets of this corporation, as shown by the books, is in excess of all its liabilities and of the par value of the stock of the corporation, all of which is fully paid, by at least $1,400,000;

" Now THEREFORE, BE IT RESOLVED, that the surplus consisting of said sum be distributed in the form of a stock dividend.

" RESOLVED that a special meeting of the stockholders of the Squire Dingee Company be and the same is hereby called to be held at the hour of 11:00 o'clock A. M. at 1309 Stock Exchange Building, 30 North La Salle Street, Chicago, Illinois, for the purpose of acting upon proposition to increase the authorized capital stock of said corporation from one thousand shares of a total par value of $100,000, to five thousand shares of preferred stock of a par value of $100 each, or a total par value of $500,000, and ten thousand shares of common stock of a par value of $100 each, or a total par value of $1,000,000, to enlarge the object of the corporation, and to increase the number of directors from four to five; and for the transaction of any other business that may properly come before said meeting;

" BE IT FURTHER RESOLVED that in case said proposition to increase the capital stock shall be carried at said stockholders' meeting, the officers of the company are hereby authorized and directed to take all steps required by law to complete and make effectual and valid such increase, and to issue stock of the company in exchange for existing stock and in distribution of surplus up to the limit and according to the plan which may be prescribed at said meeting of the stockholders."

9. At a meeting of the stockholders of Squire Dingee Company held December 15, 1922, the following resolutions were adopted:

" RESOLVED, that the capital stock is hereby increased from $100,000, consisting of 1,000 shares of the par value of $100 each to $1,500,000 consisting of 5,000 shares of preferred stock of the par value of $100 each, or a total par value of $500,000 and 10,000 shares of common stock of the par value of $100 each or a total par value of $1,000,000;

" BE IT FURTHER RESOLVED that the number of directors of the corporation is hereby increased from four to five;

" BE IT FURTHER RESOLVED that the object for which this corporation was formed as set forth in the statement of incorporation filed with the Secretary of State upon the organization of the Company, be enlarged to include the following powers in addition to the powers therein set forth: the production, manufacture, packing and sale of preserves, jams, jellies, fruit and nut butters, condiments, articles of food in cans, packages or containers of any kind, and food products generally, and barrels, kegs, casks, bottles, cans, caps, and containers of every kind, and raw materials and supplies useful for the production, packing, shipment, storage, or marketing of any of the foregoing commodities.

" RESOLVED that the president of the company be instructed to file in the office of the Secretary of State of the State of Illinois, a statement in duplicate of the foregoing increase of the capital stock of this company, enlargement of the object of the company, and increase of the number of directors, and also immediately upon receipt from the Secretary of State of the certificate of

said increase of capital stock, enlargement of object and increase of the number of directors, to file the same for record in the office of the Recorder of Deeds of Cook County, Illinois.

"RESOLVED that the preferred stock of the corporation to be issued in accordance with the increase of capital stock heretofore authorized shall be entitled to draw annual dividends when earned at the rate of but not to exceed seven per cent per annum in priority to the declaration of any dividends on any other stock of the corporation, such dividends to be cumulative. All or any part of said preferred stock may be retired ratably among the several holders thereof at any time with the approval of the Board of Directors out of accumulated earnings and surplus upon the payment of $102 for each share of preferred stock so retired, plus dividends thereon;

"BE IT FURTHER RESOLVED that the stock of this company authorized under the foregoing increase of the capital stock shall be paid for by the exchange of the present stock of the corporation and the distribution of the existing surplus of $1,400,000;

"BE IT FURTHER RESOLVED that all of the stock of the company in accordance with the increase of capital stock heretofore authorized shall be issued in the proportion of five shares of preferred stock and ten shares of common stock for every share of the present stock of the company upon the surrender thereof."

10. On December 31, 1922, the articles of incorporation of Squire Dingee Company were amended in accordance with the resolutions in paragraph 9 above and the new stock authorized therein was issued pursuant thereto.

11. At the time of the increase of the company's capital stock, Harry A. Brown received 2,450 shares of preferred stock and Frank A. Brown received 2,550 shares of preferred stock which was the preferred stock redeemed by Squire Dingee Company as in paragraph 2 hereof stated.

12. At a meeting of the Board of Directors of Squire Dingee Company held May 21, 1925, the following resolution was adopted:

"WHEREAS, there is now issued and outstanding 5,000 shares of the preferred stock of this corporation which shares are, at the option of the Board of Directors, subject to redemption and retirement; and

"WHEREAS, the holders thereof have waived all notice of a call for redemption or of intent to redeem and all requirements as to such notice and have tendered the entire 5,000 shares of said stock for redemption and retirement forthwith at the price of $37.32½ per share, exclusive of any accrued dividends, all such accruals being waived by each of said stockholders, and have agreed to accept in full payment for such shares the said sum of $37.32½ per share; and

"WHEREAS, the fixed assets of this company are carried on its books and in its balance sheet at a value which includes appreciation of the plant and equipment written up on the books by virtue of an appraisal made in 1922; and

"WHEREAS, the item of trade names and brands is carried on the books of this corporation and in its balance sheet at a valuation of $145,656.14; and

"WHEREAS, in the opinion of the Board of Directors it is desirable to materially reduce the appreciated values of plant and equipment taken up in 1922 and to eliminate entirely the valuation carried for trade names and brands;

"Now, THEREFORE, BE IT RESOLVED, that this corporation does hereby call for redemption the entire 5,000 shares of its issued and outstanding preferred stock at the price of $37.32½ per share, exclusive of any accrued dividends, and that it do forthwith redeem all of said shares at said price of $37.32½ per share, and that upon surrender to this corporation of the certificates there-

for, duly endorsed, the Treasurer of this corporation be and he is hereby authorized and directed to pay to the respective holders thereof the redemption price as aforesaid; and

" BE IT FURTHER RESOLVED, that the difference between the par value of said shares so redeemed and the redemption price thereof be applied on the books of the company in writing off entirely the item of trade names and brands in the sum of $145,656.14 and in reduction of the appreciated values of the plant and equipment; and

" BE IT FURTHER RESOLVED, that a special meeting of the stockholders of this corporation be and the same is hereby called to be held forthwith pursuant to waivers of notice and consent to be signed by each and every stockholder, or if such waivers of notice and consent cannot be procured from all of the stockholders then that such special meeting of the stockholders be held pursuant to due and proper notice to be given by the Secretary of the corporation in accordance with the laws of the State of Illinois and the By-laws of the corporation, for the purpose of submitting to a vote of the stockholders a proposal to ratify and confirm the action of the Board of Directors as hereinabove set forth, and a proposal to amend the charter of the corporation by reducing its authorized capital stock from 5,000 shares of preferred stock of the par value of $100 per share, and 10,000 shares of common stock of the par value of $100 per share, to 10,000 shares of common stock of the par value of $100 per share."

13. At a meeting of the stockholders of Squire Dingee Company held May 21, 1925, the following resolution was adopted:

" BE IT RESOLVED, that the action of the Board of Directors taken at the special meeting of said Board held on the 21st day of May, 1925, pursuant to which 5,000 shares of the outstanding preferred stock of this corporation was called for redemption and has been redeemed at the price of $37.32½ per share, exclusive of accrued dividends, and pursuant to which the Board ordered and directed that the difference between the par value of said shares so redeemed and the redemption price thereof (such difference amounting to the sum of $313,375) be applied on the books of the corporation in writing off entirely the item of trade names and brands now carried at a valuation of $145,656.14, and in reduction of the appreciated values of plant and equipment placed on the books by virtue of an appraisal had in 1922, be and the same is hereby in all respects ratified, approved and confirmed.

" BE IT RESOLVED, that the authorized capital stock of this corporation be and the same is hereby decreased from $1,500,000 consisting of 5,000 shares of preferred stock of the par value of $100 per share and 10,000 shares of common stock of the par value of $100 per share to $1,000,000 consisting of 10,000 shares of common stock of the par value of $100 per share."

14. On May 21, 1925, the articles of incorporation of Squire Dingee Company were amended in accordance with the resolution in paragraph 13 above and the 5,000 shares of preferred stock were redeemed and cancelled as provided in said resolutions. The value of the assets of the company were on said date written down on the books of the company in accordance with the said resolutions.

15. The sum of $37.325 paid for each share of preferred stock upon the redemption thereof was equal to one-fifteenth of the value per share of the capital stock of the Squire Dingee Company as of March 1, 1913.

16. The accumulated undistributed earnings of Squire Dingee Company from March 1, 1913, to May 21, 1925, were in excess of the sum of $186,625.

The respondent determined that the facts constituted a situation described in section 201 (g), Revenue Act of 1926 (made effective

January 1, 1925, by section 286). He held, (1) that in 1922 there was a stock dividend, and (2) that in 1925 the company canceled or redeemed its preferred stock "at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend." The petitioners assail this determination, challenging both propositions.

Section 201 (g) is as follows:

If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subdivision shall apply only if the cancellation or redemption is made after January 1, 1926.

Since the cancellation or redemption was not made after January 1, 1926, the subdivision only applies if there was a stock dividend in 1922. If, therefore, what was done in 1922 was not the issue of a stock dividend, the determination can not be sustained and there is no need to pursue the inquiry into the second proposition that the time and manner of the redemption were such as to make it essentially the equivalent of a taxable dividend. Conversely, if the redemption in 1925 was not essentially equivalent to a dividend, it matters not whether there was a stock dividend in 1922. The respondent's determination requires both propositions to support it, and if the stipulated facts are contrary to either, the determination must fall.

The ordinary intendment and purpose of the statute is plain enough. A stock dividend being constitutionally free from tax, *Eisner* v. *Macomber*, 252 U. S. 189, and a stock redemption being a *pro tanto* liquidation of investment, the two could easily be used in a common plan so as to circumvent the tax which would be imposed if the distribution were made directly by way of ordinary dividend. To bar such circumvention, the Revenue Act of 1921 taxed the distribution as a dividend whether it was made directly as a dividend or by the more roundabout course, and the subsequent statutes have carried the same provisions with such refinements of expression as were found necessary by experience to fulfill the purpose. Revenue Act of 1921, sec. 201 (d); 1924, sec. 201 (f); 1926, sec. 201 (g); 1928, sec. 115 (g). See H. Rept. 1, 69th Cong., 1st sess., p. 5; S. Rept. 52, 69th Cong., 1st sess., p. 15. While the obvious device, by a close corporation having a surplus, consisting of an expansion of capitalization, a stock issue and stock redemption, all within a short time pursuant to a unified plan, is plainly within the statute (see

C. B. VIII-2, p. 133), the flexible language of the provision makes it clear also that its burdens were not to be imposed arbitrarily (see C. B. VI-2, p. 14). As the taxpayer may not, in view of this statute, avoid the tax by an artificial device of empty forms, cf. *W. C. Huntoon*, 14 B. T. A. 459, so the Government may not, under this statute, impose a tax merely because there has been a stock redemption, where the circumstances are free from artifice and beyond the terms and fair intendment of the provision. Of course, where the language of the statute is specific and inelastic there is no room for avoiding its effect, whatever the inconsistency with the general purpose as disclosed by later enactments, cf. *John Stewart Bryan*, 20 B. T. A. 573; but, generally speaking, the provisions should be treated as special and applied to promote its special purpose (see *Laun et al.*, 26 B. T. A. 764).

*First.*—Judged by its purpose and operation, and laying aside the directors' designation of a stock dividend in the resolution of December 15, 1922, the issue of 1922 was, in our opinion, a stock dividend. It was an increase of capitalization and a proportionate distribution among existing shareholders of new certificates reflecting their unchanged interests in the corporation—a mere proliferation of existing interests. At the moment of change, each shareholder's proportionate rights were absolutely and relatively the same, except that each in the same ratio had preferred as well as common shares, a difference without significance here. These are the essential characteristics of a stock dividend—those which have always given point to the cases in which the question has arisen, *Gibbons* v. *Mahon*, 136 U. S. 549; *Towne* v. *Eisner*, 245 U. S. 418; *Eisner* v. *Macomber*, 252 U. S. 189; *La Belle Iron Works* v. *United States*, 256 U. S. 377; see also *Graves* v. *Graves*, 120 Atl. 420; *Kaufman* v. *Charlottesville Co.*, 23 S. E. 1003; *United States* v. *Siegel*, 52 Fed. (2d) 63. We find no support for petitioners' contention that the surrender of old certificates in exchange for new is inconsistent with a stock dividend, which is said to connote a retention of the old shares and addition of the new, rather than an exchange. The decisions establish that such difference in the mode of effecting the new capitalization is of no consequence if the essential characteristics of a stock dividend exist. *Michaels* v. *McLaughlin*, 20 Fed. (2d) 959; *In re Norton's Will*, 224 N. Y. S. 77; *J. F. Carlston*, 22 B. T. A. 217. In *Marr* v. *United States*, 268 U. S. 536, the court said of the stock dividend in *Eisner* v. *Macomber:* " It was as if the par value of the stock had been reduced, and three shares of reduced par value stock had been issued in place of every two old shares. That is, there was an exchange of certificates but not of interests."

*Hellmich* v. *Hellman*, 276 U. S. 233, throws no light on the present question, for what was there said in comparing an ordinary cash dividend with a liquidation distribution is entirely apart from the consideration of a stock dividend.

It is not necessary to analyze the statute to determine whether the 1922 issue involved an exchange of property in reorganization, for this could not be definitively determined in this proceeding. Since reorganization is defined to include recapitalization, it is possible that the statutory provisions literally overlap; but this construction would probably be avoided in resolution of the apparent confusion thus created. For a stock dividend is constitutionally free from tax, and there would be much to consider before applying the exchange provisions to its substantial equivalent, either to tax it thereby or to find it doubly free.

*Second.*—Since the preferred shares were issued in 1922 as a stock dividend, the limitation of the second sentence of subdivision 201(g) is not applicable, and it is necessary to determine whether the corporation canceled or redeemed (in this case, both) its preferred shares at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend. It is stipulated that the amount received by petitioners was not in excess of the earnings or profits accumulated after February 28, 1913, so that if the redemption was substantially equivalent to a dividend, there is no denial that it is taxable.

The facts are devoid of circumstances to indicate artifice, and there is nothing besides the redemption itself to fortify an interpretation of it as the essential equivalent of a dividend. There was in 1922 an expansion of policy which included not merely a stock dividend, within the existing authorized capital, out of surplus, but a capitalization of new values as well as surplus, a new charter authorization of shares including new preferred redeemable at 102, with their issuance, and a new charter authorization of objects of incorporation. Cf. C. B. VI-2, p. 14. After the lapse of over two years, with no evidence of any continuing plan, the preferred shares were redeemed at $37.32½, canceled, and eliminated from the charter, the common remaining as expanded, and the new objects being unaffected. Unless it can be said that the cash redemption itself, irrespective of the lapse of time and the absence of direct or circumstantial interrelation and of any special manner, imports a time and manner such as to constitute the substantial equivalent of a dividend, the evidence affords no reason for such a decision. The statute does not provide that every cash redemption of shares shall be treated *per se* as a dividend, but only those which because of some circumstance of time and manner are in fact the essential equivalent of a dividend.

Whether this means a preconceived plan to distribute earnings, an approximation of contemporaneous conduct, a substantial restoration of the capital structure to its *status quo ante* the issue, need not be decided now, because the evidence here arouses none of these questions. The only equivalence to a dividend is that the shareholders received a cash distribution from the corporation, as they would have done if a dividend had been declared and paid. But it would be stretching the legislative assimilation beyond its clear limits to regard this as decisive. It would practically delete from the provision its principal qualifications and imply a waste of words in a section of the statute which purports to be precise.

There is nothing helpful in *Phelps* v. *Commissioner*, 54 Fed. (2d) 289, for here there is no anticipatory arrangement to circumvent the tax or other circumstance to show that the substance was at variance with the form.

Since, therefore, the stipulated facts show simply a redemption of part of the shares received as a previous unrelated stock dividend, and there is nothing in time and manner to give it the character of a cash dividend, we hold it not taxable as a dividend, and reverse the respondent's determination.

*Judgment will be entered for the petitioners.*