T. I. Hare Powel, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 64464.   Promulgated November 14, 1932.

*E. W. Bradford, Esq.*, for the petitioner.
*B. U. Steele, Esq.*, for the respondent.

OPINION.

Arundell: The respondent determined a deficiency of $477.40 in income tax for 1929. The error alleged is the imposition of a tax on the value of certain " rights " to subscribe for bonds convertible into stock of the issuing corporations.

In 1929 the American Telephone and Telegraph Company, pursuant to authority given it by its stockholders, increased its capital stock and issued ten-year convertible 4½ per cent gold debenture bonds, dated July 1, 1929. The authorizations provided for the issuance to stockholders of record May 10, 1929, of one " right " to subscribe for the bonds for each share of stock held and that six subscription rights would entitle the holder to subscribe, on or before July 1, 1929, for a bond of the face amount of $100. The stockholders exercising the subscription rights had the privilege of exchanging the bonds for stock on or after January 1, 1930, at $180 per share during 1930, $190 per share during 1931 and 1932, and $200 per share during 1933 to 1937, inclusive, subject to reduction on account of the issuance of additional stock. The bonds had a value for conversion purposes equal to their principal sum.

The petitioner owned 600 shares of stock of the American Telephone and Telegraph Company on May 10, 1929, and received 600 subscription rights. He exercised the " rights " prior to their expiration date, and in 1930 exchanged them for 100 shares of stock, paying the difference of $8,000 in the fixed values in cash.

In 1929 the Missouri Pacific Railroad Company issued to the petitioner, as one of its stockholders, 100 " rights " to subscribe to convertible bonds, with similar conversion privileges. These subscription rights were issued in March, 1929, expired May 1, 1929, and were exercised by the petitioner.

In his audit of petitioner's return for 1929 the respondent treated the value of the subscription rights as a taxable dividend.

The respondent's theory of the case is that the subscription rights were issued for the purchase of bonds of the issuing corporations,

not stock, at less than their market value, and that the corporations parted with, and the petitioner received, property, taxable to the latter as a dividend at its market value.

Whether the subscription rights related to the purchase of one or the other of the securities, or both as part of one transaction, is not decisive of the question. None of the stockholders or purchasers from them were under any compulsion to exercise the "rights," or, having acquired bonds under them, to exchange the bonds for stock. The purchase of bonds and their exchange for stock was optional with the holders of the "rights." The "rights" were dealt in freely on the market before the dates of their expiration, and at all times prior thereto had a value. The uncontradicted testimony is that the option given in the subscription rights, to convert the bonds into stock at less than prevailing market quotations, was what made the authorizations valuable. The decision must turn upon whether, with the establishment of a market value for the subscription rights, the petitioner received taxable income. We think this question is answered by *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U. S. 247.

In that case the trust company in 1919 received and sold certain subscription rights to new stock which it had acquired in its capacity as guardian for the next of kin of a stockholder of the issuing corporation. The Commissioner held the entire sales price to be taxable income. In holding that only the amount received from the sale in excess of cost, computed in a prescribed manner, constituted taxable gain, the court remarked:

It is evident, we think, that such a distribution in and of itself constituted no division of any part of the accumulated profits or surplus of the company, or even of its capital; it was in effect an opportunity given to stockholders to share in contributing additional capital not to participate in distribution. * * * This privilege of itself was not a fruit of stock ownership in the nature of a profit; nor was it a division of any part of the assets of the company.

\* \* \* \* \* \* \*

The stockholder's right to take his part of the new shares therefore—assuming their intrinsic value to have exceeded the issuing price—was essentially analogous to a stock dividend. So far as the issuing price was concerned, payment of this was a condition precedent to participation, coupled with an opportunity to increase his capital investment. In either aspect, or both, the subscription right of itself constituted no gain, profit or income taxable without apportionment under the Sixteenth Amendment. *Eisner* v. *Macomber*, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, is conclusive to this effect.

Here there was no sale of the subscription rights during the taxable year, with the result that there was no realization of income on which to levy a tax.

Reviewed by the Board.

*Decision will be entered under Rule 50.*