Thomas W. White, Petitioner, et al.,[1] v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 63228, 63234–63238, 63451, 64127, 66886, 66887, 66902, 67832.

Promulgated February 27, 1934.

---

[1] Proceedings of the following petitioners are consolidated herewith: H. C. Miller; Allen B. Williams; Samuel W. Fordyce; Ruth E. Williams; Harriet Fordyce; T. E. Yemm; John H. Holliday; William R. Hayes; Ethel J. Hayes; Thomas A. Reid; and Wiley Franklin Corl.

*Abraham Lowenhaupt, Esq.*, for the petitioners.

*Dean P. Kimball, Esq.*, and *Edward C. Adams, Esq.*, for the respondent.

### OPINION.

ARUNDELL: The respondent has determined deficiencies in income for the year 1929 as follows:

| Docket No. | Petitioner | Amount | Docket No. | Petitioner | Amount |
|---|---|---|---|---|---|
| 63228 | Tomas W. White | $370.30 | 63451 | T. E. Yemm | $3,957.17 |
| 63234 | H. C. Miller | 5,774.68 | 64127 | John H. Holliday | 1,026.17 |
| 63235 | Allen B. Williams | 3,669.30 | 66886 | William R. Hayes | 2,864.83 |
| 63236 | Samuel W. Fordyce | 1,330.04 | 66887 | Ethel J. Hayes | 1,863.83 |
| 63237 | Ruth E. Williams | 2,185.86 | 66902 | Thomas A. Reid | 4,044.15 |
| 63238 | Harriet Fordyce | 242.07 | 67832 | Wiley Franklin Corl | 18,747.24 |

Each of the proceedings raises the issue of whether a transaction whereby the United Gas Improvement Co. acquired stock of the Commonwealth Utilities Corporation was a reorganization which would limit the gain realized by Commonwealth stockholders to the amount of cash received on the exchange. In the event of an adverse holding on that issue, petitioners allege that respondent used the wrong date for valuing the stock received by them.

An additional question in the case of John H. Holliday, Docket No. 64127, has to do with rights issued in connection with stock of the American Telephone & Telegraph Co.

We adopt as our findings of fact the agreed statement of facts filed at the hearing and set out here only those necessary to an understanding of the questions presented.

All of the petitioners were owners of class B common stock of the Commonwealth Utilities Corporation, hereinafter called Commonwealth. At November 12, 1929, the several kinds of Commonwealth stock were as follows:

| Kind of stock | Shares authorized | Shares outstanding |
|---|---|---|
| Common, class A, nonvoting | 100,000 | 3,164. |
| Common, class B, voting | 300,000 | 212,444. |
| Preferred, nonvoting | 50,000 | (Series A) 901. |
| Do | | (Series B) 5,044. |
| Do | | (Series C) 15,000. |

In addition to shares of class B common stock outstanding, 63,000 shares thereof were reserved for conversion of debentures, and 14,508 shares were reserved for subscription on warrants attached to the series C preferred stock. The preferred stock was preferred as to dividends and as to assets in case of liquidation. The preferred stock had no voting rights except in the event that six quarterly dividends were defaulted, in which case the holders of such stock were entitled to vote until all defaults in preferred dividends were made good.

On October 15, 1929, the United Gas Improvement Co., hereinafter called United, made an offer to the owners of Commonwealth class A and class B common stock to acquire their stock. The first portion of the written offer was addressed to the class B stockholders, and in it United offered to purchase class B stock up to 300,000 shares and to give in payment for each share thereof one share of its common stock and $11 in cash. The part of the offer addressed to the Commonwealth class A stockholders was conditioned upon the purchase of the class B stock. The offer was that if United purchased the class B stock, it would also purchase class A stock up to 43,079 shares, giving in payment for each share one share of its own common stock.

Under the above offer, United acquired 2,986 shares of class A Commonwealth stock and 267,585 shares of class B stock during the month of November 1929. In December it acquired an additional 10 shares of class A and 1,948 shares of class B. Between November 12 and December 31, 1929, the outstanding class B common stock of Commonwealth had been increased, partly through exercise of warrants on series C preferred stock and conversion of debentures, and at December 31, 1929, the outstanding class B common stock amounted to 277,672 shares. By that date, pursuant to the offer of October 15, United had acquired 2,996 shares of class A common and 269,533 shares of class B common.

All of the petitioners accepted the United offer and at some undisclosed time between November 26 and December 31, 1929, received for each share of Commonwealth class B common one share of United common and $11 in cash, and those who owned Commonwealth class A common received for each share thereof one share of United common. It is stipulated that respondent has correctly determined the number of shares of Commonwealth exchanged in each case and the date of acquisition and cost thereof.

United acquired none of the Commonwealth preferred stock. Commonwealth has continued in business and is still in existence. At a meeting of directors of Commonwealth on December 16, 1929, all of the directors, officers, and members of the executive committee, except Wiley F. Corl, president, resigned, and at the same meeting

there were elected in their stead directors, officers, and members of the executive committee men who were officials of United.

The completion of the offer of October 15, 1929, by United was subject to the condition that two thirds of the class B common stock be deposited for exchange on or before November 22, 1929, subject to an extension of not more than five days, but in the event the full two thirds were not deposited United could nevertheless declare the offer effective by written notice to the depositary prior to November 22, 1929, or prior to November 27 in the event of extension of time. Under the offer, J. P. Morgan & Co. was designated as the depositary for the Commonwealth stock. By the close of business November 12, 1929, there had been deposited 202,885 shares of class B common and 1,989 shares of class A common stock of Commonwealth.

All of the petitioners except Allen B. Williams and Ruth E. Williams had deposited their Commonwealth class B common stock with the depositary on or before November 12, 1929. The two named petitioners, Allen B. Williams and Ruth E. Williams, had deposited part of their stock prior to November 13, and as to the balance, which was being held for them by brokers in St. Louis, they instructed the brokers on October 24 and again on November 4 to send the certificates to the depositary, which instructions the broker sent to their New York correspondents on or about November 5, 1929.

On November 13, 1929, the president of United publicly announced that the exchange offer had become effective, the offer having been accepted by the owners of the requisite number of class B shares of Commonwealth. He further announced that in order to take advantage of the exchange offer, owners of class B and class A stock who had not already deposited their shares should do so on or before November 22, 1929. On November 15, 1929, the depositary issued a form letter announcing that the exchange plan had become effective and that under the terms of the offer United stock and cash were to be delivered to the depositary not later than November 27, and requesting holders of certificates of deposit to forward them to the depositary as soon as convenient.

In the exchange offer of October 15 it was provided that if the offer became effective by acceptance of the owners of the requisite amount of Commonwealth stock, or by declaration, United would, " prior to November 27, 1929, (or if the time for depositing stock is extended as above, prior to December 2, 1929) " deliver to the depositary the United stock " and the cash required for the purpose of effecting the exchange * * * and the Depositary will then make delivery " of such stock and cash. Further, if the exchange offer did not become effective the Commonwealth stock was to be returned

to the depositors thereof, "provided that no such return need be made prior to December 2, 1929."

The deposit agreement attached to the exchange offer contained the following provisions:

(a) The Depositary assumes no obligation to distribute any stock or to pay any money to any Depositor unless and until, and only to the extent, that the same shall be delivered or paid to it for such purpose.

\* \* \* \* \* \* \*

(h) The Depositary shall not, by the deposit of stock hereunder, obtain any title to such stock so deposited, nor any interest therein or obligation in respect thereof other than the custody and disposition thereof in accordance with the terms of this Agreement.

Petitioner John H. Holliday owned 109 shares of stock of the American Telephone & Telegraph Co. during 1929, and received thereon 109 rights to subscribe to that company's 10-year convertible 4½ percent gold debenture bonds dated July 1, 1929, which rights he exercised. The respondent has held that the rights constituted a dividend to petitioner.

In each of these proceedings the respondent has held that the exchange of Commonwealth class B common stock for United stock and cash was a closed transaction giving rise to taxable gain, measured by the value of the United stock on November 26, 1929, plus the cash of $11 per share.

The question of whether petitioners realized taxable gain on the exchange depends upon whether or not the acquisition of Commonwealth stock by United constituted a "reorganization" within the meaning of section 112 (i) (1) of the Revenue Act of 1928. Petitioners contend that the acquisition of the stock by United effected a consolidation of the corporations, hence a reorganization, and consequently under section 112 (c)(1) their taxable gain on the exchange of Commonwealth class B stock for United stock and cash is limited to the cash received. The statutory provisions are set out in the margin.[1]

---

[1] SEC. 112 (b) (3). STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

SEC. 112 (c) (1). If an exchange would be within the provisions of subsection (b) (1), (2), (3) or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of other property.

SEC. 112 (i) (1). The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form or place of organization, however effected.

The outstanding stock of Commonwealth at December 31, 1929, and the portion thereof acquired by United between November 26 and December 31 pursuant to the exchange offer are shown by the following tabulation:

| Class of stock | Shares outstanding | Shares acquired by United Co. | Class of stock | Shares outstanding | Shares acquired by United Co. |
|---|---|---|---|---|---|
| *Common—* | | | *Preferred—* | | |
| Class A, nonvoting | 3,164 | 2,996 | Series A, nonvoting | 901 | None |
| Class B, voting | 277,672 | 269,533 | Series B, nonvoting | 5,044 | None |
| | | | Series C, nonvoting | 15,000 | None |

Thus United acquired more than a majority of the voting but less than a majority of the nonvoting stock.

The general rule laid down in section 112 of the Revenue Act of 1928 is that "upon the sale or exchange of property, the entire amount of gain or loss * * * shall be recognized". This is followed by a number of exceptions which limit the recognition of gain or loss in specified cases. Taxpayers seeking the benefit of these excepting provisions must bring the facts of their cases clearly within them. *Tex-Penn Oil Co.*, 28 B.T.A. 917, 954. The task of petitioners here is to establish that the acquisition of Commonwealth stock by United comes within the statutory definition of reorganization. Sec. 112 (i) (1). If they can do so it is not questioned that as to Commonwealth stockholders the limitation of gain provisions of section 112 (c) (1) apply.

Petitioners disclaim any intention of attempting to bring the transaction within the parenthetical clause of the definition section. They start with quotations from court decisions and text books to the effect that the word "consolidation" means any conjunction or union of stock or property of two or more corporations, whereby operation is brought under one management, no matter how effected, and regardless of whether dissolution of any of the corporations takes place. This they concede, is too broad a definition for use here, because the taxing statute is concerned only with those consolidations which are effected through an exchange of stock. Thus restricting the broad definition, the argument, as we understand it, is that a unified management brought about through an exchange of stock constitutes a consolidation. The statute says that "the term ' reorganization ' *means* (A) a merger or consolidation ", and this wording, they say, precludes any search for an expansion of or addition to the word "reorganization". In other words, once we find a consolidation, as petitioners define it, we need go no further into the statute to decide whether the case comes within its terms. The parenthetical clause in the statutory definitions, it is urged, is not

exclusive, and only serves to bring in certain cases of incomplete consolidation, or, as petitioners phrase it, "of lower quality" than a consolidation as they define it.

Petitioners' definition, in our opinion, is broader than is warranted by the wording of the statute. Had Congress meant the word "consolidation" to cover so wide a field there would have been no occasion for inserting the parenthetical clause. The situations designated in that clause are comprehended within the definition built up by petitioners, and there would be no need for their special enumeration if the word "consolidation" embraced them. We are authoritatively told that "the words within the parenthesis * * * expand the meaning of 'merger' or 'consolidation.'" *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462. Under petitioners' theory there would be no room for expansion, the word consolidation itself being all-embracing.

Our view is that if the transaction is to come within the statutory definition at all it must be by way of the parenthetical clause. The premise of the statutory definition of reorganization is that it means "a merger or consolidation." The technical meaning of these words has often been given. *Central R.R. Co.* v. *Georgia*, 98 U.S. 359; *Lee* v. *Atlantic Coast Line*, 150 Fed. 775; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937. The statute then goes on and by the words in parentheses brings in "some things which partake of the nature of a merger or consolidation but are beyond the ordinary and accepted meaning of those words." *Pinellas Ice & Cold Storage Co.*, *supra*. It is to be noted that the parenthetical clause does not include *all* transactions which might loosely be spoken of as mergers or consolidations, but only *some* which partake of the nature of a merger or consolidation. The words in parentheses expand or enlarge the commonly accepted meaning of the basic words in the definition, but only to a degree measurable by the enlarging words themselves. They mark the outside limits of the cases which would otherwise not ordinarily be considered mergers or consolidations. We may not enlarge them still more by grafting on situations which are beyond the scope of the words used. We are concerned here with that part of the definition which says that merger or consolidation includes "the acquisition by one corporation of *at least* a majority of the voting stock *and* at least a majority of the total numbers of shares of all other classes of stock or another corporation." These are irreducibly minimum requirements, and the transaction here does not meet them. As set out above, the United Co. acquired none of the nonvoting preferred stock of Commonwealth. We therefore hold that the exchange was not a statutory reorganization upon which the recognition of gain or loss is limited.

Petitioners urge that the construction placed upon the statute by respondent leads to absurd results. For instance, had there been a default in dividends on the preferred stock it would have become voting stock, and there would have been no need to acquire it as the class B common acquired would constitute the required majority. We recognize that where there is room for construction a statute should be construed so as to avoid unjust or absurd results, but where it is unambiguous as it is here in laying down minimum requirements we have no choice but to follow it and any claim of absurd effect should be addressed to the law-making branch of the Government.

Losing on the first issue, petitioners plead in the alternative that the basic date for valuing the United stock received is November 13, 1929, instead of November 26, 1929, the date taken by respondent. On the earlier date the fair market value, stipulated, was $24.62 per share, while on the later date it was $29.94.

It is argued for petitioners that the announcement of the president of the United Co. on November 13, 1929, declaring the exchange offer effective, created a binding contract between the petitioners who had deposited their stock and the United Co.; that as a result of such contract title to the deposited shares passed to the United Co.; and that on that date petitioners became irrevocably entitled to United stock and cash.

There are several steps leading up to the actual consummation of the exchange to be considered. First, the offer by United to acquire Commonwealth stock. Clearly there was no closed transaction then. Next, the deposit of Commonwealth stock with the depositary. That gave the depositors no right to demand their consideration, as the deposit agreement specifically provided that the depositary should not obtain title to any of the stock, and further that:

The Depositary assumes no obligation to distribute any stock or to pay any money to any Depositor unless and until, and only to the extent, that the same shall be delivered or paid to it [by United] for such purposes.

Under this quoted provision it was necessary that United deposit stock and cash before Commonwealth stockholders could make any rightful demand on the depositary for their stock and cash. Under the offer to Commonwealth stockholders it was provided that if the offer became effective " by acceptance or declaration " the United company " agrees that prior to November 27, 1929 * * * it will deliver to the Depositary * * * the Common stock of The United Gas Improvement Company and the cash required * * * and the Depositary will then make delivery of such Common stock and cash * * *." Under these provisions United had up to and including November 26, 1929, to make delivery of its stock and cash to the depositary, regardless of any declaration of effectiveness. It

is difficult to see upon what ground the petitioners had any right to demand their stock and cash before the date that United was required to make delivery. We need not go into the question of what the situation would have been in the event of an earlier delivery by United, as the stipulation does not disclose when delivery was made.

Under the doctrine of constructive receipt, taxpayers on the cash basis may at times be held to realize income before the actual receipt of the money or property representing the income, but this occurs only where they have it in their power to reduce such income to possession and elect to forego it. We have no such situation here. The petitioners were not entitled to receive United cash and stock prior to delivery by the United Co., and this is not shown to have taken place prior to November 26, 1929.

The respondent has used the same date, November 26, 1929, in respect of all the petitioners, in which action we find no error, and it is, therefore, unnecessary to go into the question of whether the stock of two of the petitioners, Allen B. Williams and Ruth E. Williams, was delivered to the depositary prior to that date.

The one other question, presented in the case of John H. Holliday, Docket No. 64127, is whether the petitioner, owning stock in the American Telephone & Telegraph Co., realized income upon the receipt of rights to subscribe to bonds of that company. This is the same question we had in *T. I. Hare Powel*, 27 B.T.A. 55; dismissed by the Circuit Court of Appeals for the First Circuit, and on authority of that case we decide this issue for petitioner.

*Decision will be entered under Rule 50.*