JAMES A. CONNELLY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44081–44083, 44089, 44090, 45745, 45746, 45833, 45834, 46267, 48120, 48121, 48143, 51967, 54713, 54714, 60566, 60745, 60746, 66948.

Promulgated April 10, 1934.

*Benjamin Grund, Esq., J. S. Seidman, Esq.,* and *M. L. Seidman, C.P.A.,* for the petitioners.
*P. S. Crewe, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Mary B. Connelly; L. B. Connelly; George W. Olmsted; Iva C. Olmsted; and Walter Lloyd.

MATTHEWS: These proceedings, which have been consolidated, are for the redetermination of deficiencies in income tax as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 44081 | James A. Connelly | 1924 | $48,821.68 |
| | | 1925 | 35,056.64 |
| 45833 | ____do | 1926 | 18,561.61 |
| 46267 | ____do | 1927 | 17,258.72 |
| 51967 | ____do | 1928 | 34,661.36 |
| 60566 | ____do | 1929 | 9,995.42 |
| 66948 | ____do | 1930 | 18,370.54 |
| 44082 | Mary B. Connelly | 1924 | 242.67 |
| | | 1925 | 60.22 |
| 44083 | L. B. Connelly | 1924 | 263.32 |
| | | 1925 | 336.16 |
| 45834 | ____do | 1926 | 91.82 |
| | | 1927 | 44.17 |
| 44090 | George W. Olmsted | 1924 | 35,917.51 |
| | | 1925 | 19,334.99 |
| 45745 | ____do | 1926 | 9,450.00 |
| 48121 | ____do | 1927 | 8,619.38 |
| 54714 | ____do | 1928 | 18,833.12 |
| 60746 | ____do | 1929 | 4,753.67 |
| 44089 | Iva C. Olmsted | 1924 | 7,608.29 |
| | | 1925 | 16,599.34 |
| 45746 | ____do | 1926 | 7,738.49 |
| 48143 | ____do | 1927 | 8,179.49 |
| 54713 | ____do | 1928 | 16,721.11 |
| 60745 | ____do | 1929 | 3,331.67 |
| 48120 | Walter Lloyd | 1926 | 1,779.04 |
| | | 1927 | 829.55 |

All the issues raised by the pleadings, except two, were settled by a written stipulation signed by the parties and filed at the hearing, and effect will be given thereto in the redetermination of the deficiencies under Rule 50.

The main issue submitted for our determination, which is common to each of the proceedings, is whether the respondent erred in treating as taxable dividends the amounts received by the petitioners from the J. G. Curtis Leather Co. in connection with the retirement of its class A preferred stock.

The remaining issue, which we shall first consider, relates only to the tax liability of James A. Connelly for the year 1929, Docket No. 60566, and has to do with rights issued in connection with stock of the American Telephone & Telegraph Co.

Petitioner James A. Connelly owned 273 shares of stock of the American Telephone & Telegraph Co. on May 10, 1929, and received thereon 273 rights to subscribe to that company's 10-year convertible 4½ percent gold debenture bonds dated July 1, 1929, which rights he exercised. The respondent has held that the value of the rights in the sum of $1,552.69 constituted a dividend to the petitioner and has increased the petitioner's income for 1929 in that amount.

This same question was presented in *T. I. Hare Powel*, 27 B.T.A. 55, which case was dismissed by the Circuit Court of Appeals for the First Circuit, and on authority of that decision this issue is determined in favor of the petitioner. See also *Thomas W. White*, 29 B.T.A. 1272.

With respect to the issuance and retirement of the class A preferred stock of the J. G. Curtis Leather Co., the material facts were stipulated by the parties and will be summarized herein.

In 1901 the J. G. Curtis Leather Co. was organized under the laws of the State of New Jersey, to engage in the business of tanning bag, strap, and case leather. This company, which will hereinafter be called the New Jersey corporation, was liquidated on December 30, 1922, under the circumstances hereinafter set out. Immediately prior to its liquidation its outstanding capital stock consisted of 10,000 shares of 7 percent cumulative preferred stock of a par value of $100 each, and 15,000 shares of common stock of a par value of $100 each.

On December 27, 1922, there was organized under the laws of the State of Delaware a corporation called the J. G. Curtis Leather Co., which will hereinafter be called the Delaware corporation, with an authorized capital stock of $5,000,000, consisting of 440,000 shares of 6 percent cumulative and serially maturable class A preferred stock of a par value of $5 each; 3,000 shares of 7 percent cumulative class B preferred stock of a par value of $100 each; and 25,000 shares of common stock of a par value of $100 each.

The Delaware corporation was organized in pursuance of a plan whereby it should acquire the stock of the New Jersey corporation for its own stock and cash. All the stockholders of the New Jersey corporation agreed to the plan submitted, under which the Delaware corporation agreed to give in exchange for each share of stock of the New Jersey corporation, common and preferred, one share of common stock of the Delaware corporation and either $100 in cash or $70 in cash and three tenths of one share of the 7 percent class B preferred stock. Accordingly, on December 29, 1922, the Delaware corporation issued and delivered to the stockholders of the New Jersey corporation separate certificates of common and class B preferred stock and separate checks in the amounts to which the stockholders of the New Jersey corporation were entitled on account of the exchange of stock under this plan.

All the stock of the New Jersey corporation was owned by 12 stockholders. Petitioners held the following shares of stock in the

New Jersey corporation and were offered in exchange therefor cash and stock of the Delaware corporation, as follows:

| | Shares held in New Jersey corporation | | Shares offered in Delaware corporation | | Cash |
|---|---|---|---|---|---|
| | Common | Preferred | Common | Preferred | |
| James A. Connelly | 5,445 | 4,500 | 9,945 | 1,350 | $859,500 |
| Mary B. Connelly | 100 | 250 | 350 | 75 | 27,500 |
| L. B. Connelly | 415 | None | 415 | None | 41,500 |
| Iva C. Olmsted | 844 | 4,750 | 5,594 | 1,425 | 416,900 |
| George W. Olmsted | 4,700 | None | 4,700 | None | 470,000 |
| Walter Lloyd | 1,250 | 500 | 1,750 | 150 | 160,000 |

On December 29, 1922, in order to secure the money with which to meet its cash requirements, the Delaware corporation negotiated and secured from its depositary, the Bankers Trust Co. of New York, a 6 percent interest-bearing loan in the principal amount of $2,200,000. This loan was repaid to the Bankers Trust Co., with interest, on December 30, 1922.

On December 29, 1922, the Delaware corporation issued for cash, at par, its entire authorized issue of class A preferred stock in the total sum of $2,200,000. All of this stock was subscribed for by the stockholders of the New Jersey corporation, the shares to be apportioned pro rata from the different series A to K inclusive, and the subscriptions were paid for from the moneys which they were entitled to receive from the exchange of their stock in the New Jersey corporation. Petitioners were among the purchasers of this stock, as follows:

| | Shares | Amount | | Shares | Amount |
|---|---|---|---|---|---|
| James A. Connelly | 171,900 | $859,500 | Iva C. Olmsted | 83,380 | $416,900 |
| Mary B. Connelly | 5,500 | 27,500 | George W. Olmsted | 94,000 | 470,000 |
| L. B. Connelly | 8,300 | 41,500 | Walter Lloyd | 32,000 | 160,000 |

On December 30, 1922, the Delaware corporation acquired all the assets and assumed all the debts and obligations of the New Jersey corporation in return for the surrender to the New Jersey corporation of all of its outstanding shares of stock.

The comparative annual balance sheets of the Delaware corporation from January 1, 1923, to January 1, 1926, inclusive, disclose that the plant and equipment, the investment in affiliated companies, and the good will acquired from the New Jersey corporation at its liquidation, were placed on the books of the Delaware corporation at $653,158, $728,629.71, and $4,696,296.20, respectively; and an analysis of earned surplus for the same period shows that Delaware corporation had an earned surplus for the years 1924, 1925, and 1926 of $196,569.78, $458,596.32, and $808,035.01, respectively.

The class A preferred stock of the Delaware corporation had priority over the other classes of stock with respect to the payment of dividends, and on liquidation or dissolution of the company the class A preferred stock was to be redeemed in full, with all accumulated and accrued dividends, out of the net assets of the corporation before any distribution of assets to holders of other classes of stock. There were 11 series of class A preferred stock, as follows:

| Series | Shares | Maturity date | Series | Shares | Maturity date | Series | Shares | Maturity date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A | 22,000 | July 1, 1923 | E | 44,000 | July 1, 1927 | I | 44,000 | July 1, 1931 |
| B | 44,000 | July 1, 1924 | F | 44,000 | July 1, 1928 | J | 44,000 | July 1, 1932 |
| C | 44,000 | July 1, 1925 | G | 44,000 | July 1, 1929 | K | 22,000 | Dec. 31, 1932 |
| D | 44,000 | July 1, 1926 | H | 44,000 | July 1, 1930 | | | |

The class A preferred stock was, pursuant to its terms, retired and canceled at the maturity of the respective series. Some of this stock was purchased at par by the Delaware corporation for the treasury prior to maturity and canceled at maturity. In each case the holders of the stock surrendered their certificates to the Delaware corporation, against payment to them of par and accrued dividends, and the certificates were canceled by the Delaware corporation.

The regular cumulative dividends have been paid each quarter on the outstanding class A and class B preferred stock of the Delaware corporation since its organization. No change has taken place in the amount of outstanding common and class B preferred stock since the organization of the Delaware corporation, nor have any new classes of stock been issued. There have been no additional issues or reissues of class A preferred stock. In 1932 the Delaware company's charter was amended, eliminating the class A preferred stock from its capitalization.

Between 1923 and 1930 there were 23 changes in holdings of common stock of the Delaware corporation involving 4,395 shares. There were also 94 changes in holdings of the class A preferred stock involving more than 40,000 shares, other than purchases by the Delaware corporation for the treasury. Petitioners were included among the purchasers and sellers in these transactions.

Petitioners, in preparing their returns for the years here in issue, treated the disposition of their holdings of class A preferred stock as a capital transaction, with resulting gain, if any, measured by the difference between the proceeds thereof and the cost of the stock disposed of. In no case was there a deduction for a loss. There is no dispute as to the correctness of the figures used by the petitioners in computing their profits.

The respondent, in arriving at the proposed deficiencies, determined that the amounts received on the disposition by the petitioners

of the class A preferred stock were taxable in their entirety as dividends, subject to surtax.

Section 115 (g) of the Revenue Act of 1928 [2] and corresponding sections of prior revenue acts were enacted by Congress in an attempt to prevent the avoidance of tax upon distributions of corporate earnings, ordinarily to be distributed as dividends and so taxable, by means of redemption and cancellation of stock. As was said by this Board in *Harry A. Koch*, 26 B.T.A. 1025, 1027:

> The purpose of this provision of the statute is to make futile the employment of a roundabout plan of distributing corporate earnings which, if made as dividends are ordinarily paid, would be taxable. * * *

See also, with respect to the application of the principles underlying this provision of the statute, *Alfred A. Laun*, 26 B.T.A. 764; *Pearl B. Brown, Executrix*, 26 B.T.A. 901; *Robert R. Meyer*, 27 B.T.A. 44; *Annie Watts Hill*, 27 B.T.A. 73; *Henry B. Babson*, 27 B.T.A. 859; *Louis Rorimer*, 27 B.T.A. 871.

Inasmuch as the stock involved herein was not issued as a stock dividend, the cancellations made prior to January 1, 1926, do not come within the operation of section 201 (g) of the Revenue Act of 1926, which is identical in its provisions to section 115 (g) of the Revenue Act of 1928, quoted in the margin. *Henry B. Babson, supra.* Section 201 (f) of the Revenue Act of 1924 applies only in cases where stock dividends have been issued and is likewise not applicable here.

We find nothing in the present proceedings to distinguish them materially from *Pearl B. Brown, supra*, and the cases in which this decision has been followed. We are of the opinion that the cancellations made subsequent to January 1, 1926, were not made at such time and in such manner as to make them " in whole or in part essentially equivalent to the distribution of a taxable dividend." We are convinced that there was no premeditated plan or artifice on the part of the petitioners in connection with the entire transaction and that the element of tax avoidance or evasion is not present. It is proper for a corporation at the time it makes provision for the issuance of preferred stock also to make provision at the same time for its redemption, retirement, or purchase by the company. In the instant proceedings there was no subsequent reissuance of all or

---

[2] (g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926.

any part of the class A preferred stock. The common stock of the Delaware corporation and the class A preferred stock changed hands rather actively during the taxable years and the stock which was retired was not held in the same proportions as the remaining stock.

Since, therefore, the stipulated facts show a retirement and cancellation of all the class A preferred stock in accordance with the terms under which it was issued, and there is nothing in time and manner to give it the character of a cash dividend, we hold it not taxable as a dividend, and reverse the respondent's determination on this issue.

*Judgment will be entered under Rule 50.*